

EXHIBIT "A"

## IN THE UNTIED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# 744-70849

| | |
|---|---|
| EXECUTIVE CAR WASH OF MAPLE GLEN | : |
| | : |
| v. | : |
| | : **NO. 02-CV-3747** |
| ENVIRONMENTAL, INC. | : |
| and | : |
| ENVIRONMENTAL HAZARD SERVICES, INC. | : |
| | : |
| v. | : |
| **ATLANTIC PETROLEUM** | : |
| **TECHNOLOGIES, INC.** | : |
| c/o Lawrence McGlaughlin and | : |
| Frank McGlaughlin | : |
| 740R Burmont Road | : |
| and | : |
| **ATLANTIC RICHFIELD CO.** | : |
| **d/b/a ARCO** | : |
| c/o CT Corporation System | : |
| 1635 Market Street | : |
| Philadelphia, PA  19103 | : |
| | : |

## THIRD PARTY COMPLAINT AGAINST ADDITIONAL DEFENDANTS
## ATLANTIC PETROLEUM TECHNOLOGIES, INC. AND ATLANTIC RICHFIELD

Original Defendants, Environmental, Inc ("Environmental") and Environmental Hazard Services, Inc., ("Hazard") by and through their attorneys, Marks, O'Neill, O'Brien & Courtney, P.C., hereby bring this cause of action and allege the following in support thereof:

1.      Additional Defendant Atlantic Richfield d/b/a ARCO ("ARCO") is a California corporation and was and/or is doing business in the Commonwealth of Pennsylvania.

2.      Additional Defendant Atlantic Petroleum Technologies, Inc. ("Atlantic") is a Pennsylvania corporation and was and/or is doing business in the Commonwealth of Pennsylvania.

PH072761.1

3.     The plaintiff instituted suit by filing a Complaint in the Eastern District of Pennsylvania alleging that Defendants Environmental and Hazard were negligent in failing to discover three (3) oil tanks allegedly located beneath the plaintiff's premises.  A true and correct copy of plaintiff's complaint is attached and incorporated hereto as **Exhibit "A"**.

4.     Defendants Environmental and Hazard answered said complaint on or about August 8, 2002.  A true and correct copy of defendants' answer is attached and incorporated hereto as **Exhibit "B"**.

5.     Plaintiff alleged a whole host of damages against Defendants Environmental and Hazard in their complaint, including, *inter alia*, costs of remedying the underground soil contamination, devaluation of real property value, and inability to do business.

6.     Original Defendants now join Additional Defendants Atlantic and ARCO for joint and several liability, negligence, negligent misrepresentation, breach of contract, and liability under the Storage Tank and Spill Prevention Act.

### Count I - Negligence
### Defendants Environmental and Hazard v. Additional Defendant
### Atlantic Petroleum Technologies, Inc.

7.     Original Defendants hereby incorporate the preceding paragraphs as if set forth fully herein at length.

8.     On or before December 4, 1992, Defendants contracted with Additional Defendant Atlantic to perform an environmental site inspection of the premises owned and occupied by plaintiff.  A true and correct copy of a letter dated December 7, 1992 evidencing the existence of said contract is attached hereto and incorporated herein as **Exhibit "C"**.

9.     Additional Defendant Atlantic had a legal duty to Defendants to perform a full and complete environmental site inspection in a professional and careful manner.

PH072761.1

10.    If the claims asserted by plaintiff in the Complaint are found to be true, which have been and still are expressly denied by Defendants Environmental and Hazard, then Defendants Environmental and Hazard suffer damages as a result of Additional Defendant Atlantic's breach of its duty.

11.    If the claims asserted by plaintiff in the Complaint are found to be true, which have been and are still expressly denied by defendants, then any damages suffered by plaintiff or defendants were directly and proximately caused by Additional Defendant Atlantic.

**WHEREFORE**, should the trier of fact in this matter find the allegations contained in plaintiff's Complaint to be true, which have been and still are denied, then defendants respectfully request this Honorable Court to enter judgment in favor of Defendants and against plaintiff and/or Atlantic, or, in the alternative, it is respectfully requested that this Court find Third-Part Defendant Atlantic solely liable to the Plaintiffs or liable over to Defendants by way of contribution and/or indemnification for the cause of action as set forth in the Plaintiffs' Complaint, with the existence of any liability on the party of the Original Defendants being expressly denied.

### Count II - Negligent Misrepresentation
### Defendants Environmental and Hazard v. Additional Defendant
### Atlantic Petroleum Technologies, Inc.

12.    Defendants hereby incorporate the preceding paragraphs as if set forth fully herein at length.

13.    If the plaintiff's allegations are deemed to be true, which have been expressly denied, then Atlantic in the course of its business supplied false information to Defendants concerning the existence of these alleged underground storage tanks and the existence of the underground contamination.

14.    This information sought by the defendants from Additional Defendant Atlantic was needed to provide guidance for business transactions.

PH072761.1

15.    Defendants justifiably relied on the representations made by Additional Defendant Atlantic.

16.    Accordingly, if the claims asserted by Plaintiff in the Complaint are found to be true, which have been and still are expressly denied by Defendants Environmental and Hazard, then Additional Defendant Atlantic is liable over to Environmental and Hazard.

**WHEREFORE**, should the trier of fact in this matter find the allegations contained in plaintiff's Complaint to be true, which have been and still are denied, then defendants respectfully request this Honorable Court to enter judgment in favor of Defendants and against plaintiff and/or Additional Defendant Atlantic, or, in the alternative, it is respectfully requested that this Court find Third-Part Defendant Atlantic solely liable to the Plaintiffs, or liable over to Defendants by way of contribution and/or indemnification for the cause of action as set forth in the Plaintiffs' Complaint, with the existence of any liability on the party of the Original Defendants being expressly denied.

## Count III - Breach of Contract
### Defendants Environmental and Hazard v. Additional Defendant Atlantic Petroleum Technologies, Inc.

17.    Defendants hereby incorporate the preceding paragraphs as if set forth herein at length.

18.    Defendants contracted with Additional Defendant Atlantic to perform a subsurface environmental inspection of plaintiff's premises to detect whether or not any underground storage tanks were present in plaintiff's property.

19.    If the plaintiff's allegations are found to be true, which have been expressly denied, then Additional Defendant Atlantic breached its contract with Defendants in failing to identify the three (3) tanks alleged by plaintiff in the Complaint.

**WHEREFORE**, should the trier of fact in this matter find the allegations contained in plaintiff's Complaint to be true, which have been and still are denied, then defendants respectfully

PH072761.1

request this Honorable Court to enter judgment in favor of Defendants and against plaintiff and/or

Additional Defendant Atlantic, or, in the alternative, it is respectfully requested that this Court find

Third-Part Defendant Atlantic solely liable to the Plaintiffs, or liable over to Defendants by way of

contribution and/or indemnification for the cause of action as set forth in the Plaintiffs' Complaint,

with the existence of any liability on the party of the Original Defendants being expressly denied.

### Count IV - The Storage Tank and Spill Prevention Act
### Defendants Environmental and Hazard v. Additional Defendant Atlantic Richfield

20.    Defendants hereby incorporate the preceding paragraphs as if set forth herein at

length.

21.    The Storage Tank and Spill Prevention Act ("STSPA"), 35 P.S. § 6021.101 et seq.,

states relevantly that "[t]he owner or operator of a storage tank and the landowner or occupier on

whose land a storage tank is or was located shall not allow pollution resulting from, or a release

to occur from, a storage tank," 35 P.S. § 6021.1310.  The STSPA also states that it is unlawful to

cause air, soil or water pollution.  Id.

22.    Additional Defendant ARCO was an owner, operator and/or lessor of storage tanks

and/or were landowners or occupiers on whose land storage tanks are or were located, who

allowed pollution and/or a release to occur from, storage tanks, which pollution and/or release

contaminated and/or polluted the Plaintiff's property.

23.    If the plaintiff's allegations are found to be true, which have been expressly denied,

then Additional Defendant ARCO has violated the STSPA.

24.    Additional Defendant ARCO, violator of the STSPA, has received all the notice they

are due under the STSPA.  No notice is required to Defendants under the STSPA, because (a) 35

P.S. § 6021.1305(e) does not require notice to violators, and (b) the purpose of notice is to bring

about a prompt cleanup.  Cleanup has already been performed in this action by Plaintiff, who now

seeks reimbursement for said costs.   Nonetheless, Additional Defendant ARCO has received notice of their pollution, contamination, release and their violation of the STSPA through their conversations and/or negotiations with Plaintiff, which resulted in the Settlement and Release which is attached and incorporated hereto as **Exhibit "D"**.

25.    If the plaintiff's allegations are found to be true, which have been expressly denied, then Additional Defendant ARCO has directly violated the STSPA and is solely liable to Plaintiff.

**WHEREFORE**, should the trier of fact in this matter find the allegations contained in plaintiff's Complaint to be true, which have been and still are denied, then defendants respectfully request this Honorable Court to enter judgment in favor of Defendants and against plaintiff and/or ARCO, or, in the alternative, it is respectfully requested that this Court find Additional Defendant ARCO solely liable to the Plaintiffs, or liable over to Defendants by way of contribution and/or indemnification for the cause of action as set forth in the Plaintiffs' Complaint, with the existence of any liability on the party of the Original Defendants being expressly denied.

**MARKS, O'NEILL, O'BRIEN
& COURTNEY, P.C.**

BY: _____
　　　　**Michael T. Hamilton, Esquire**
　　　　Attorney for Defendants,
　　　　Environmental, Inc. and Environmental
　　　　Hazard Services, Inc.

## VERIFICATION

I, **Michael T. Hamilton, Esquire,** hereby verify that I am the Attorney for the Defendants named herein; that I am authorized to take this Verification; and that the averments set forth therein are true and correct to the best of my knowledge, information and belief.

Further, I understand that this Verification is made subject to the penalties of 18 PA. C.S.A. §4904 relating to unsworn falsification to authorities.

**MARKS, O'NEILL, O'BRIEN
& COURTNEY, P.C.**


BY: _____

        **Michael T. Hamilton, Esquire**
        Attorney for Defendants,
        Environmental, Inc. and Environmental
        Hazard Services, Inc.


DATE:_____

PH072761.1

## CERTIFICATE OF SERVICE

I, **Michael T. Hamilton, Esquire**, hereby certify that a true and correct copy of **Defendants' Joinder Complaint**, was served on the          day of              , 2004, by first class mail, postage prepaid, upon all parties of record.


                                    **MARKS, O'NEILL, O'BRIEN
                                    & COURTNEY, P.C.**


                        **BY:** _____
                                    **Michael T. Hamilton, Esquire**
                                    Attorney for Defendants,
                                    Environmental, Inc. and Environmental
                                    Hazard Services, Inc.

PH072761.1



# EXHIBIT "A"

63-144

JUN 13 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**RBS**

EXECUTIVE CAR WASH OF MAPLE GLEN
1357 Gypsy Hill Road
Gwynedd Valley, PA 19437 : NO. 02-cv-3747

vs.

ENVIRONMENTAL INC.
91 Landing Road
Newport, NJ 08345

and

ENVIRONMENTAL HAZARD SERVICES, INC.:
91 Landing Road
Newport, NJ 08345

JURY TRIAL DEMANDED

## C O M P L A I N T

### I.    Parties

1.    Plaintiff, Executive Car Wash of Maple Glen, Inc. ("Executive") is a Pennsylvania corporation with its principal place of business at 1357 Gypsy Hill Road, Gwynedd Valley, Pennsylvania 19437.

2.    Defendant, Environmental, Inc. ("Environmental") is a non-Pennsylvania corporation with its principal place of business at 91 Landing Road, Newport, New Jersey 08345.

3.    Defendant, Environmental Hazard Services, Inc. ("Hazard") was a non-Pennsylvania corporation with its last known address at 91 Landing Road, Newport, New Jersey 08345.

4.    Upon information and belief, Environmental is the successor to Hazard.

123092 v2

## II.    <u>Jurisdiction and Venue</u>

5.    This is an action between citizens of different states.  The matter in controversy exceeds the sum or value of $75,000.00, exclusive of all costs.  This Court therefore has jurisdiction of this matter by virtue of 28 U.S.C. §1332(a)(1).  The United States Code, 28 U.S.C. §1367(a), provides supplemental jurisdiction by the District Court over the state claims contained in this Complaint.  By reason of the foregoing, the present action is properly before this Court.

6.    A substantial part of the events or omissions giving rise to the claim in this action occurred in this judicial district.  Venue is therefore properly laid within this judicial district pursuant to 28 U.S.C. §1391(a)(2).

## III.    <u>Facts</u>

7.    In the Fall of 1992, Executive was investigating refinancing a car wash located at Limekiln Pike and Welsh Road in Maple Glen, Pennsylvania (the "Premises").

8.    As part of that investigation, and as a condition for its financing necessary to purchase the property, Executive contracted with Hazard to perform a Phase I environmental site assessment on the Premises.

9.    That Phase I environmental site assessment was completed on or about December 10, 1992.  As part of that environmental site assessment, Hazard conducted a site survey utilizing a Fero Magnetic Locator to identify buried metal objects.

123092 v3

10.     Hazard found no evidence of underground storage tanks, fill caps, vent pipes, concrete pads or distribution equipment, except for a small underground heating oil storage tank.

11.     Hazard found that any soil contamination was within acceptable limits.

12.     In reliance on that environmental site assessment, Executive purchased the Premises for the purpose of a car wash.

13.     Hazard failed to discover that three (3) 10,000 gallon tanks and accompanying soil contamination remained on the Premises.

14.     Executive did not discover the presence of these underground storage tanks and accompanying contamination until it attempted to sell the Premises in the Fall of 2000.

15.     As part of the preparations for that sale, Executive contracted with Environmental to conduct, *inter alia*, a subsurface investigation of the property.

16.     During this work performed on the Premises by Environmental, three (3) 10,000 gallon tanks filled with concrete with visible soil contamination on top of the tank field, on the sides and beneath the tanks were found.

17.     Executive could not have discovered the presence of these underground tanks or the accompanying underground contamination until October 2000 when Environmental performed its examination.

18.     Upon information and belief, Environmental is the successor organization to Hazard.

## COUNT I
### Breach of Contract
### vs. Environmental and Hazard

19.    The allegations in Paragraphs 1 through 18 are incorporated herein by reference as fully set forth therein.

20.    Executive entered into an agreement with Hazard in 1992 to conduct an inspection of the property to ascertain, *inter alia*, the existence of underground storage tanks and soil contamination.

21.    At all times, Executive fulfilled its contractual obligations, that is, made the site available for inspection and paid Hazard for its services.

22.    Hazard breached its contract with Executive by failing to conduct the site examination contracted for, which included locating underground storage tanks and accompanying contamination.

23.    Because of this breach, which could not have been discovered in the exercise of due diligence until another survey was conducted in October of 2000, Executive purchased the Premises at a price that did not account for the existence of underground storage tanks and soil contamination, was forced to incur not inconsiderable expense in remediating the property suffered damages occasioned by delay in the sale of the property, suffered damages occasioned as of the inability to do business, and received a lower sale price than originally agreed upon suffering a loss in excess of $300,000.

123092 v3

**WHEREFORE**, Plaintiff, Executive Car Wash, demands judgment in its favor and against Environmental Inc. and Environmental Hazard Services, Inc. in an amount in excess of $75,000.00, plus interests, costs and attorneys' fees.

## COUNT II
## Negligence

24.    The allegations in Paragraphs 1 through 23 are incorporated herein by reference as fully set forth therein.

25.    By failing to locate the three (3) underground storage tanks and the accompanying contamination, and by failing to advise the Plaintiff of the existence of the same, Hazard and its successor, Environmental, negligently performed the work associated with the site assessment.

26.    In the exercise of reasonable diligence, Plaintiff could not have ascertained knowledge of this negligent conduct until October of 2000 when it had another assessment performed when these underground conditions were discovered.

27.    The Defendants' failure as noted above constitutes a negligent breach of its duties to the Plaintiff, resulting in damages to the Plaintiff incurred when Executive purchased the Premises at a price that did not account for the existence of underground storage tanks and contamination, when Executive had to remediate the Premises, when Executive suffered delays in the sale of the Premises, when Executive could not do business, and when Executive received a lower price for the property.

WHEREFORE, Plaintiff, Executive Car Wash, demands judgment in its favor and against Environmental Inc. and Environmental Hazard Services, Inc. in an amount in excess of $75,000.00, plus interests, costs and attorneys' fees.

## COUNT III
### Professional Malpractice

28.    The allegations in Paragraphs 1 through 27 are incorporated herein by reference as fully set forth therein.

29.    The actions of Environmental and Hazard were intentional, reckless, grossly negligent, unlawful, outrageous and wanton, necessitating the imposition of punitive damages.

30.    Defendants had a duty to act in a professional manner and with due diligence in regard to the work performed for Plaintiff.

31.    As demonstrated above, Defendants breached their duty to Plaintiff as a result of both negligent and intentional acts.

32.    As a direct and proximate result of this breach, Plaintiff suffered damages as described above.

WHEREFORE, Plaintiff, Executive Car Wash, demands judgment in its favor and against Environmental Inc. and Environmental Hazard Services, Inc. in an amount in excess of $75,000.00, plus interests, costs and attorneys' fees.

## COUNT IV
### Negligent Representation

33.    The allegations in Paragraphs 1 through 32 are incorporated herein by reference as fully set forth therein.

123092 v3

6

34.     Defendants, in the course of their business profession of employment, supplied false information to the Plaintiff, <u>to wit</u>, concerning the existence of these underground storage tanks and the existence of this underground contamination.

35.     This information was provided to the Plaintiff for the guidance of Plaintiff in their business transactions.

36.     Plaintiff justifiably relied on this information.

37.     These Defendants failed to exercise reasonable care or competence in obtaining and communicating this information.

38.     Plaintiff was damaged by this reliance as aforesaid.

**WHEREFORE,** Plaintiff, Executive Car Wash, demands judgment in its favor and against Environmental Inc. and Environmental Hazard Services, Inc. in an amount in excess of $75,000.00, plus interests, costs and attorneys' fees.

FLAMM, BOROFF & BACINE, P.C.

Date: June ____, 2002          By: _____
                                    Steven Kapustin
                                    Attorney I.D. #17981
                                    Attorneys for Plaintiff
                                    925 Harvest Drive, Suite 220
                                    Blue Bell, PA  19422
                                    215-239-6000

123092 v3

# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EXECUTIVE CAR WASH OF MAPLE
GLEN

vs

ENVIRONMENTAL, INC.

and

ENVIRONMENTAL HAZARD SERVICES,
INC.

NO. 02-CV-3747

 FILED AUG 08 2002

### DEFENDANTS ENVIRONMENTAL, INC. AND ENVIRONMENTAL HAZARD SERVICES, INC.'S ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

1.    Denied.

2.    Admitted.

3.    Denied.  Environmental Hazard Services, Inc. was a Pennsylvania Corporation with its principal place at 2316 Meeting House Road in Boothwyn, Pennsylvania.  This business was sold in 1996.  Environmental Hazard Services, Inc. never had a place of business in New Jersey.

4.    Admitted.

5.    Denied.

6.    Denied.

7.    Denied.

8.    Denied.

9.    Denied.

10.    Denied.

11.    Denied.

12.    Denied.

13.    Denied.

14.    Denied.

15.    Denied.

16.    Denied.

17.    Denied.

18.    Denied.

19.    Answering defendants hereby incorporate by reference the preceding paragraphs as if set forth fully herein at length.

20.    Denied.

21.    Denied.

22.    Denied.

23.    Denied.

24.    Answering defendants hereby incorporate by reference the preceding paragraphs as if set forth fully herein at length.

25.    Denied.

26.    Denied.

27.    Denied.

28.    Answering defendants hereby incorporate by reference the preceding paragraphs as if set forth fully herein at length.

29.    Denied.

30.    Denied.

31.    Denied.

32.    Denied.

33.    Answering defendants hereby incorporate by reference the preceding paragraphs as if set forth fully herein at length.

-- 2 --

34.   Denied.

35.   Denied.

36.   Denied.

37.   Denied.

38.   Denied.

**WHEREFORE**, answering defendants demand judgment in their favor and against plaintiff together with costs of suit, including reasonable attorney's fees if allowed by law.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

If plaintiff sustained the injuries and damages as alleged in their Complaint, then same must be reduced by the provisions of the Pennsylvania Comparative Negligence Act, 42 Pa. C.S.A. § 7100.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief may be granted.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff has failed mitigate its damages.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the applicable Statute of Limitations.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are limited to and/or barred by the applicable provisions of the New Jersey Property Insurance Guaranty Association Act.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff has failed to exhaust all other available insurance required by the New Jersey Property and Casualty Insurance Guaranty Association Act and, therefore, is barred from recovery in this action against answering defendants.

**WHEREFORE,** answering defendants respectfully request judgment in their favor and against plaintiff together with costs and reasonable attorney's fees as may be permitted under Federal and State Law.

-- 3 --

Respectfully Submitted,

NAULTY, SCARICAMAZZA & McDEVITT, LTD.

BY:

MICHAEL A. MULLEN, ESQUIRE
Attorney I.D. #80433
Naulty, Scaricamazza & McDevitt
1617 John F. Kennedy Blvd. Suite 1600
1600 One Penn Center
Philadelphia, PA 19103
215-568-5116

Attorney for Defendants,
Environmental, Inc. and Environmental Hazard Services, Inc.

-- 4 --

## CERTIFICATE OF SERVICE

I, MICHAEL A. MULLEN, ESQUIRE, hereby certify that on August 8, 2002 I served a copy of the foregoing Answer and Affirmative Defenses to Plaintiff's Complaint on counsel for plaintiff via U.S. Mail, First Class, postage prepaid, addressed as follows:

Steven Kapustin, Esquire
Flamm, Boroff & Bacine, P.C.
925 Harvest Drive
Suite 220
Blue Bell, PA 19422, Esquire


NAULTY, SCARICAMAZZA & McDEVITT, LTD.

BY:

MICHAEL A. MULLEN, ESQUIRE
1600 One Penn Center
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103
(215) 568-5116

Attorney for Defendant(s),
Environmental, Inc., et al.





**Atlantic Petroleum Technologies, Inc.**

*Corporate Office:*
Dutton Mill Industrial Park
396 Turner Way
Aston, PA  19014
Tel: (215) 497-6729
Fax: (215) 497-6739

*Regional Offices:*
Boca Raton, FL
Hartsville, SC

Letter# APT 92-357

December 7, 1992

Environmental Hazards Services Inc.
2316 Meetinghouse Rd.
Boothwyn, PA  19061

ATTENTION:  Richard Berkes

RE:  Executive Car Wash
     of Maple Glen.

Dear Richard:

Atlantic Petroleum Technologies conducted a site survey at the above referenced site on 12/4/92.  The purpose of the survey was to locate any possible underground storage tanks. A Fero magnetic locator was used to identify buried ferrous metal objects.

The storage tanks used for commercial purposed have been removed at some prior date, unestablished at this point.

A 500 to possibly a 1000 gallon heating oil tank exists behind the building and is in use.  This tank is currently unregulated.

There are oil-water separators in the rear of the building with oil on the surface of two manholes out of four.  This could be cause for concern.  They appear to be of concrete construction and are in use.

Thank you for the opportunity to be of service.  Please call with any questions you may have.

Sincerely yours,

ATLANTIC PETROLEUM TECHNOLOGIES, INC.

John C. Secker
Operations Manager

JCS/gam



# EXHIBIT "D"

<u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement and Release ("Agreement"), effective May 1, 2002, is among and between Atlantic Richfield Company, a Delaware corporation ("ATLANTIC RICHFIELD"), Charles E. Pappas, M.D., The Executive Car Wash of Maple Glen, Inc., a Pennsylvania corporation, successor to Maple Glen Jiffy Wash, Inc., a Pennsylvania corporation, and their respective heirs, legal representatives, successors, transferees and assigns (individually and collectively "Releasors" or "the Releasors"). As used in this Agreement, ATLANTIC RICHFIELD and the Releasors may be referred to as the "parties" collectively.

<u>RECITALS</u>

WHEREAS, The Executive Car Wash of Maple Glen, Inc., successor to Maple Glen Jiffy Wash, Inc., is the previous owner of certain real property located at 601 Welsh Road, also known as 400 Limekiln Pike, Upper Dublin, Pennsylvania, more particularly described in Attachment "A" attached hereto ("Property"); and

WHEREAS, the Property previously was owned by ATLANTIC RICHFIELD and used for the sale of ARCO-branded petroleum products; and

WHEREAS, Releasors have removed underground storage tanks from the Property, and have performed environmental assessment, remediation and monitoring activities to their satisfaction and the satisfaction of applicable governmental agencies (the "Work"); and

WHEREAS, Releasors have made a claim against ATLANTIC RICHFIELD for the costs associated with the Work; and

WHEREAS, in order to avoid the expense, delay and uncertainty of litigation, ATLANTIC RICHFIELD and Releasors are entering into this Agreement to settle all claims that Releasors parties may have against ATLANTIC RICHFIELD without any admission of liability or fault on the part of either ATLANTIC RICHFIELD or Releasors.

## AGREEMENT AND RELEASE

NOW THEREFORE, intending to be legally bound, and in consideration of their mutual covenants and representations as set forth herein, the parties agree as follows:

1.    <u>Recitals</u>.

The Recitals set forth above and the definitions given therein are incorporated herein as part of this Agreement.

2.    <u>Scope of Agreement</u>.

By this Agreement, the parties compromise and settle all claims they may have against each other, including but not limited to all claims related to soil and groundwater contamination, if any, that is present on or that has migrated from the Property, except as provided in Paragraph 4(d).

3.    <u>Payment</u>.

Within 30 (Thirty) days of the date of final execution of this Agreement, ATLANTIC RICHFIELD shall pay to Releasors the sum of $99,000 (Ninety-nine Thousand Dollars). Such payment shall be made by check payable to "Flamm, Boroff & Bacine, attorneys for Charles E. Pappas" and delivered to Steven Kapustin, Flamm, Boroff & Bacine, 925 Harvest Drive, Suite 220, Blue Bell, PA 19422. Releasors certify that their federal tax identification number is 23-2864510.

4(a).    <u>Releases of Claims</u>.

Except as provided in Paragraph 4(d), Releasors, for themselves and their past and present employees, agents, heirs, successors, transferees and assigns, hereby release and forever discharge ATLANTIC RICHFIELD, its subsidiaries, divisions, affiliated corporations, past and present, and their former or current dealers, lessees, tenants, trustees, officers, directors, employees, agents, shareholders, successors, transferees and assigns ("Releasees"), of and from any and all claims, liabilities, losses, demands, actions, causes of action, proceedings, costs or attorneys' fees, of any kind or nature whatsoever which Releasors now have, ever had or may in the future have, whether known or unknown, suspected or unsuspected, which arise from or pertain in any way to the Property, including but not limited to: (1) the operations of Releasees on the Property, (2) the presence of petroleum products or

contamination on the Property or offsite of the Property, 3) the presence on the Property of underground tanks, underground piping, or other equipment, or (4) the Work.

The claims released by Releasors under this Agreement are hereafter referred to as "Released Claims".

4(b). <u>Effect on Judgments and Settlements</u>.

Releasors hereby agree that any judgment or settlement obtained by any of them against or with any person or entity not a party to this Agreement on any claim arising from or pertaining in any way to the Property, including but not limited to (1) the operations of Releasees on the Property, (2) the presence of petroleum products or contamination on the Property or offsite of the Property, or (3) the presence on the Property of underground tanks, underground piping, or other equipment, or (4) the Work, shall be reduced in proportion to the *pro rata* share of liability of the Releasees for such claim. In any settlement of such claim, the Releasors shall require all parties to the settlement to execute in favor of the Releasees a release in the form of Paragraph 4(a) hereof.

4(c). <u>Covenant Not to Sue</u>.

It is the intent of the parties that all obligations and liabilities among them be entirely settled and released in accordance with the provisions of this Agreement. Accordingly, each party covenants and agrees that they shall neither

institute, cause, foster, maintain nor support against any other party hereto any lawsuit or other litigation, or any claim, notice of violation, citation, petition, order or other proceeding of whatever nature, pertaining to or arising directly or indirectly in connection with any matter released or settled in accordance with the provisions of this Agreement.

4(d).  Claim for Contribution.

The Released Claims do not include a claim for contribution for an action brought by an adjacent property owner against Releasors arising from migration of petroleum products or contamination from the Property onto the adjacent property. Releasors reserve the right to assert such a contribution claim against ATLANTIC RICHFIELD.

5.  Unknown Facts.

Releasors and ATLANTIC RICHFIELD acknowledge that they may hereafter discover facts different from, or in addition to, those which they know or believe to be true with respect to the subject matter of this Agreement and both agree that this Agreement, including without limitation, the releases contained herein, shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof.

6.    Confidentiality.

The parties agree that neither Releasors nor ATLANTIC
RICHFIELD or their agents or employees shall disclose, discuss
with or disseminate to any other person or entity the terms of
the Agreement, excepting the parties' attorneys or accountants or
in a formal in-court proceeding brought by either ATLANTIC
RICHFIELD or Releasors to enforce the provisions of this
Agreement or in conjunction with a judgment or settlement as
provided in Paragraph 4(b), or as otherwise required by law.  If
an action is brought by any party to enforce this Agreement,
neither the parties nor their attorneys shall disclose or discuss
this Agreement with the media, press, or public.


7.    Warranties of Releasors.

Releasors hereby represent and warrant that they have not
heretofore assigned or transferred, or purported to assign or
transfer, to any person, entity, corporation, partnership or any
other type of association, any of the Released Claims, and that
all persons or entities that performed the Work have been paid.
Releasors further warrant and represent that The Executive Car
Wash of Maple Glen, Inc. is the successor by articles of merger
of Maple Glen Jiffy Wash, Inc.


8.    Facilitation.

Releasors and ATLANTIC RICHFIELD agree that they will from
time to time execute and deliver such further instruments or take

such further action as the other party may reasonably request to effectuate this Agreement.

9.    Nonwaiver.

Neither the Releasors' nor ATLANTIC RICHFIELD's failure to enforce the provisions of Paragraph 6 shall result in a waiver of its rights under that paragraph.  In addition, should a waiver be found from a failure to enforce those rights, the waiver shall not result in a waiver of either Releasors' or ATLANTIC RICHFIELD's rights to enforce the provisions of Paragraph 6 relating to any subsequent breach.

10.   Successors and Assigns.

This Agreement shall bind and inure to the benefit of the heirs, successors, transferees and assigns of Releasors and ATLANTIC RICHFIELD.

11.   Survival of Rights and Obligations.

The Released Claims set forth in this Agreement do not apply to any rights or obligations arising out of this Agreement, and all such rights and obligations shall survive the execution of this Agreement.

12.   Captions.

The captions to sections or subsections of this Agreement are solely for the convenience of the parties, are not a part of

this Agreement, and shall not be used for the interpretation or determination of the validity of this Agreement or any provision thereof.

13.  <u>No Admission of Liability</u>.

Neither the obligations undertaken by ATLANTIC RICHFIELD or Releasors pursuant to this Agreement nor the execution by ATLANTIC RICHFIELD or Releasors of this Agreement shall be construed as an admission or concession by ATLANTIC RICHFIELD or Releasors of any liability or fault.

14.  <u>Applicable Law</u>.

This Agreement shall be construed under the laws of the Commonwealth of Pennsylvania.

15.  <u>Ambiguities</u>.

The parties hereto expressly waive any common law or statutory rule of construction that ambiguities should be construed against the drafter of this Agreement, and agree that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

16.  <u>Notice</u>.

A written notice or communication sent pursuant to this Agreement may be sent via first class mail to ATLANTIC RICHFIELD at: 333 South Hope Street, Los Angeles, CA 90071; and to

Releasors at: Flamm, Boroff & Bacine, 925 Harvest Drive, Suite 220, Blue Bell, PA 19341.

17. <u>Entire Agreement</u>.

This Agreement contains the entire understanding and agreement of the parties with respect to the subject matter hereof. There has been, is and will be, no representation, covenant, or undertaking other than those expressly set forth in this Agreement. Releasors hereby acknowledge and represent that in releasing, discharging and settling certain claims and in executing and entering into this Agreement, neither ATLANTIC RICHFIELD nor any agent, attorney, employee or representative of ATLANTIC RICHFIELD has made any promise, representation, warranty, covenant, warning or inducement whatsoever, express or implied, except as contained in this Agreement, concerning all or any part of the subject matter hereof, to induce Releasors to execute this Agreement. Releasors hereby acknowledge and represent that they have not executed this Agreement in reliance upon any promise, covenant, representation, warranty, warning or inducement not specifically contained in this Agreement. Releasors hereby acknowledge and represent that they have read and understand this Agreement and each and every term of this Agreement, and have reviewed or have had the opportunity to review this Agreement with legal counsel.

18. <u>Third Party Beneficiaries.</u>

Except as otherwise provided herein, this Agreement is for the benefit of the parties hereto, and shall not create any rights as a third party beneficiary in any person or entity not a party to this Agreement. The parties do not waive any rights they may have against any person or entity not a party to this Agreement.

19.    <u>Authority to Execute</u>.

Each party represents that any individual who has executed this Agreement on its behalf has been duly authorized by that party to sign this Agreement.

20.    <u>Integration and Amendment</u>.

This Agreement supersedes all prior agreements or understandings, written or oral, among the parties with respect to the subject matter hereof. Furthermore, this Agreement may be amended from time to time only by a written instrument executed by ATLANTIC RICHFIELD and the Releasors.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year above first written.

Charles Pappas, M.D.

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF *Montgomery*

On this _13th_ day of _May_, 2002, before me, a notary public in and for the State and County aforesaid, personally appeared Charles Pappas, to me personally known and known to me to be the same persons described in and who executed the within instrument as their voluntary acts and for the purposes therein contained.

_Deborah F. Boyles_
Notary Public

NOTARIAL SEAL
Deborah F. Boyles, Notary Public
Whitpain Township, County of Montgomery
My Commission Expires Dec. 8, 2003

The Executive Car Wash of Maple Glen, Inc.

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF *Montgomery*

On this _13th_ day of _May_, 2002, before me, a notary public in and for the State and County aforesaid, personally appeared _Charles Pappas_, to me personally known to be the person whose name is subscribed to the within instrument, and who acknowledged that he is the _President_ of The Executive Car Wash of Maple Glen, Inc., and that he executed the same on behalf of said corporation, being duly authorized to do so by corporate resolution as the voluntary act of said corporation and for the purposes therein contained.

_Deborah F. Boyles_
Notary Public

NOTARIAL SEAL
Deborah F. Boyles, Notary Public
Whitpain Township, County of Montgomery
My Commission Expires Dec. 8, 2003

Atlantic Richfield Company

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF *Chester*

On this _10th_ day of _May_, 2002, before me, a notary public in and for the State and County aforesaid, personally appeared _WALTER HUFFARD_, to me personally known to be the person whose name is subscribed to the within instrument, and who acknowledged that he is the

_____MANAGER_____ of Atlantic Richfield
Company, and that he executed the same on behalf of said
corporation, being duly authorized to do so by corporate
resolution as the voluntary act of said corporation and for the
purposes therein contained.

_____
                    Notary Public

NOTARIAL SEAL
Monica D. Close, Notary Public
Uwchlan Twp., Chester County
My Commission Expires Jan. 12, 2006

ATTACHMENT 'A'

BEGINNING at a steel pipe set at the intersection of the southwesterly side of Welsh Road (45 feet wide) with the southeasterly side of Limekiln Pike (50 feet wide); extending thence (1) along the said southwesterly side of Welsh Road South 42 degrees 03 minutes 20 seconds East 200 feet to a steel pipe; thence (2) at right angles to Welsh Road and along line of other land of Levinia K. Simmers and Edwin H. Simmers South 47 degrees 56 minutes 40 seconds West 93.38 feet to a steel pipe; thence (3) still along line of other lands of Levinia K. Simmers and Edwin H. Simmers North 82 degrees West 93.38 feet to a steel pipe set in the said southeasterly side of Limekiln Pike; and thence (4) along said southeasterly side of Limekiln Pike North 8 degrees East 200 feet to the steel pipe at the first mentioned point and place of BEGINNING.