# EXHIBIT "E"

## MORTGAGE AND SECURITY AGREEMENT (PA)

Date: May 8, 1992

Mortgagee: **FIDELITY BANK, NATIONAL ASSOCIATION**
Broad and Walnut Streets
Philadelphia, PA 19109
Attn: Michelle A. Pedersen
Private Banking Division - 1MBO

Mortgagor: **Maple Glen Jiffy Wash, Inc.**

(Mailing Address): 1357 Gypsy Hill Road
Gwynedd Valley, PA 19437

Mortgaged Premises: 400 Limekiln Pike
Parcel #54-00-10180-00-8
Upper Dublin Township, Montgomery County, Pennsylvania

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
54-00-10180-00-8   UPPER DUBLIN
400 LIMEKILN PIKE
MAPLE GLEN JIFFY WASH INC
B 004B U 023 L    4245   DATE: 06/03/92

Note or Guaranty Amount: FIVE HUNDRED TWENTY-NINE THOUSAND FOUR HUNDRED TWENTY-THREE DOLLARS & 40/100------19--
($ 529,423.40   )   MAY 8, 1992

**1. Grant of Mortgage.** In order to secure the payment and performance to Mortgagee of the Liabilities (as defined below), including but not limited to future advances, Mortgagor hereby grants, bargains, sells, releases and conveys to Mortgagee, its successors and assigns all those certain tracts or pieces of ground, set forth above as Mortgaged Premises, as more particularly described in Exhibit "A" attached to and incorporated by reference in this Mortgage (the "Premises").

TOGETHER WITH (the Premises together with the following property, rights and interests are hereinafter collectively referred to as the "Mortgaged Property"):

(1) any and all buildings and improvements erected or hereafter erected thereon;

(2) any and all fixtures, appliances, machinery, furniture, furnishings, appliances and equipment, and other articles of personal property, belonging to Mortgagor, at any time now or hereafter installed in, attached to or situated in or upon the above described Premises or the buildings and improvements now or hereafter erected thereon, or used or intended to be used in connection with the Premises, or in the operation of the buildings and improvements, plant, business or dwelling situate thereon, whether or not the personal property is or shall be affixed thereto;

(3) all building materials, fixtures, building machinery and building equipment delivered on site to the Premises during the course of, or in connection with, construction or repair or renovation of the buildings and improvements;

(4) any and all easements, hereditaments and appurtenances belonging to the Premises or any part thereof hereby mortgaged or intended so to be, or in any way appertaining thereto, and all streets, alleys, passages, ways, water courses and all easements and covenants now existing or hereafter created for the benefit of Mortgagor or any subsequent owner or tenant of the Premises over ground adjoining the Premises and all rights to enforce the maintenance thereof, and all other rights, liberties and privileges of whatsoever kind or character, and the reversions and remainders, income, rents, issues and profits arising therefrom, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law or in equity, of Mortgagor in and to the Premises or any part thereof, all licenses, permits and agreements with or from all boards, public utilities, agencies, or departments, governmental or otherwise relating to or affecting the use or any part of the Mortgaged Property or the use or occupancy thereof whether heretofore or hereafter issued or executed; and

(5) All right, title and interest of Mortgagor in and to

(a) all present and future leases between Mortgagor, as landlord, and any occupant of the Mortgaged Property, as tenant (which present and future leases, and Mortgagor's interest thereunder, are hereinafter referred to as the "Leases");

(b) all rents, issues and profits payable under the Leases and under any future renewals, amendments or modifications thereof;

(c) all awards or payments, including interest thereon, which may be made with respect to the Mortgaged Property, or any part thereof, whether from the exercise of the right of eminent domain (including any transfer made in lieu of the exercise of said right) or for any other injury to or decrease in the value of the Mortgaged Property, and

(d) all insurance policies covering the Mortgaged Property and all proceeds of and any unearned premiums on any such insurance policies including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property.

TO HAVE AND TO HOLD the Mortgaged Property hereby conveyed or mentioned and intended so to be, unto Mortgagee, its successors and assigns, to its own use forever.

**2. Security Agreement.** This Mortgage constitutes a security agreement under the Uniform Commercial Code and creates a security interest in the personal and other property included in the Mortgaged Property, and all replacements of, substitutions for, and additions to, such property, and the proceeds thereof, including insurance proceeds. Mortgagor shall, at Mortgagor's own expense, execute, deliver, file and refile any financing or continuation statements or other security agreements Mortgagee may require from time to time to perfect, confirm and maintain the lien of this Mortgage and Security Agreement with respect to such property. Without limiting the foregoing, Mortgagor hereby irrevocably appoints Mortgagee attorney-in-fact for Mortgagor to execute, deliver and file such instruments for or on behalf of Mortgagor at Mortgagor's expense.

**3. Liabilities.** This Mortgage and the Mortgaged Property secure and will secure all present and future financial obligations of Mortgagor, including but not limited to all sums due under that certain Promissory Note or Guaranty (either of such instruments, as applicable, referred to herein as the "Note") in the stated principal amount set forth above as Note or Guaranty Amount executed and delivered by Mortgagor and all other principal amounts shown on the internal books and records of Mortgagee, howsoever evidenced, and any extensions or renewals and substitutions for such obligations, whether primary, secondary, absolute or contingent, direct or indirect, joint, several or independent, voluntary or involuntary, (including overdrafts), due or to become due, held or to be held by Mortgagee for its own account or as agent for another or others, whether created directly or acquired by assignment or otherwise, and all instruments or documents now or hereafter evidencing any of the above, and all modifications, amendments, supplements or replacements of such instruments or documents, together with all accrued, unpaid interest and all other sums due under any such obligations (individually and collectively in this Mortgage, the "Liabilities").

**4. Future Advances.** The Liabilities include all Liabilities at any time or times after the date of this Mortgage from Mortgagee to or for the benefit of Mortgagor, whether or not such future advances are made pursuant to a commitment, including all costs, expenses, court costs and reasonable attorney's fees incurred in the collection of any Liabilities and any advances made at any time or times for payment of taxes, insurance or maintenance or repair of the Mortgaged Property, or for the establishment, maintenance or enforcement of Mortgagee's lien and security interest under, or rights and remedies set forth in this Mortgage.

**5. Term.** This Mortgage and the estate hereby granted and conveyed shall become void if the Liabilities are paid in full or otherwise satisfied and all other terms and conditions of this Mortgage and the Liabilities are fulfilled or performed.

**6. Warranties of Mortgagor.** Mortgagor warrants and agrees:

(a) that it is a corporation/partnership/sole proprietorship, duly organized, validly existing and in good standing under the laws of the state of its organization, and has the necessary power and authority to execute, deliver and perform its obligations under this Mortgage, the Note and all other documents required by Mortgagee in connection herewith; the execution and performance thereof have been duly authorized by all necessary proceedings, and upon execution and delivery, they will be valid, binding and enforceable in accordance with their terms; Mortgagor's execution and performance hereunder will not violate any laws or regulations applicable to Mortgagor, any organizational documents of Mortgagor or any agreements to which Mortgagor is a party or by which it or any of its properties is bound; all consents or approvals required in connection with this Mortgage have been obtained; and that the loan documents and this Mortgage contain no untrue statements of a material fact nor do they omit to state a material fact;

(b) that it presently possesses an unencumbered fee simple title to the Mortgaged Property, except for those title objections which are of record on the date hereof and which Mortgagee expressly agrees to accept, that this Mortgage is a valid and enforceable first lien on the Mortgaged Property, subject only to the aforesaid title objections; and that Mortgagor shall, subject to Mortgagor's right of possession prior to default, quietly enjoy and possess the Mortgaged Property. Mortgagor shall preserve such title and the validity and priority of the lien hereof and shall forever warrant and defend the same to Mortgagee against the claims of all parties and persons whomsoever;

(c) that it is, and will hereafter be, the owner of the landlord's interest in the Leases; and that the Leases are and will be valid and subsisting leases of the Mortgaged Property for the terms therein set forth;

(d) that it shall make, execute, acknowledge and deliver all such further or other instruments or assurances as may at any time hereafter be reasonably desired or required by Mortgagee for more fully and effectually granting, assigning, transferring and setting over the Mortgaged Property and its interest in the Leases hereby mortgaged, or intended so to be, unto Mortgagee for the purpose aforesaid, and Mortgagor will pay all costs of recording or filing any such statements or documents in such public offices as Mortgagee may require.

**7. Transfer of Title.** Without the prior written consent of Mortgagee, Mortgagor shall not voluntarily, or involuntarily, or by operation of law, sell, transfer, convey, or in any other manner change the ownership of, or title to, all or any portion of the Mortgaged Property, or any interest therein or any partnership or corporation having an interest in the Mortgaged Property. For the purposes of this Paragraph 7, the transfer by any partner or shareholder of any of its interest in Mortgagor shall constitute a transfer of an interest in the Mortgaged Property.

**8. Payment and Performance.** Mortgagor shall pay to Mortgagee all principal and interest, and other sums required to be paid under this Mortgage and the Liabilities, in accordance with their stated terms and conditions; shall perform and comply with all agreements, conditions, covenants, provisions and stipulations set forth herein or therein, and shall timely perform all of its obligations and duties as landlord under the Leases.

BOOK 6904 PAGE 819

9. **Maintenance of Mortgaged Property.**

   (a) Mortgagor shall abstain from and shall not permit the commission of waste in or about the Mortgaged Property, and shall not remove or demolish, or alter the structural character of, any building erected at any time on the Mortgaged Property, without the prior written consent of Mortgagee, shall not permit the Mortgaged Property to become vacant, deserted or unoccupied, and shall maintain the Mortgaged Property in good condition and repair, reasonable wear and tear excepted. Mortgagee, or its agent, shall have the right to enter upon the Mortgaged Property at any reasonable hour for the purpose of inspecting the order, condition and repair of the buildings and improvements erected thereon. Mortgagor shall promptly comply and represents and warrants that the Mortgaged Property currently complies with all applicable laws, ordinances, regulations and orders (including, without limitation, environmental laws and regulations) relating to the Mortgaged Property by all federal, state, municipal and other governmental authorities including, without limitation, all applicable rules and regulations promulgated by the Commonwealth of Pennsylvania (the "State") or any agency thereof.

   (b) Mortgagor warrants and represents that it has complied with all requirements of local, state and federal law in connection with the acquisition of the Mortgaged Property.

   (c) To the best of Mortgagor's knowledge, after due inquiry and investigation, no lien has been attached to any revenues or any real or personal property owned by Mortgagor and located in the State, including, but not limited to, the Mortgaged Property, arising from an intentional or unintentional action or omission of Mortgagor or any previous owner and/or operator of said real property, including, but not limited to, the Mortgaged Property, resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters of the State or onto lands from which it might flow or drain into said waters or into waters outside the jurisdiction of the State where drainage may have resulted to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed, held in trust or otherwise controlled by the State.

   (d) Mortgagor has not received a summons, citation, directive, letter or other communication, written or oral, from the State concerning any intentional or unintentional action or omission on Mortgagor's part resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters of or onto the lands of the State, or into the waters outside the jurisdiction of the State resulting in damage to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed, held in trust or otherwise controlled by the State.

   (e) Mortgagor has no knowledge of the presence of and shall not cause or permit to exist a releasing, spilling, leaking, pumping, pouring, emptying or dumping of a hazardous substance into waters of the State or onto the lands from which it might flow or drain into said waters, or into waters outside the jurisdiction of the State where damage may result to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed, held in trust or otherwise controlled by the State, unless said release, spill, leak, pumping, emitting, pouring, emptying or dumping is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal or state governmental authorities.

   (f) So long as Mortgagor shall own or operate any real property located in the State, Mortgagor shall duly file or cause to be duly filed with the State or its designated agency such reports and/or information returns as may be required or appropriate under applicable law.

   (g) In the event that there shall be filed a lien against the Mortgaged Property by the State arising from an intentional or unintentional action or omission of either of Mortgagor, resulting in the releasing, spilling, pumping, emitting, emptying or dumping of hazardous substances into the waters of the State or onto lands from which it might flow or drain into said waters, then Mortgagor shall, within thirty (30) days from the date that Mortgagor is given notice that the lien has been placed against the Mortgaged Property or within such shorter period of time in the event that the State has commenced steps to cause the Mortgaged Property to be sold pursuant to the lien, either (i) pay the claim and remove the lien from the Mortgaged Property, or (ii) furnish (a) a bond satisfactory to Mortgagee in the amount of the claim out of which the lien arises, (b) a cash deposit in the amount of the claim out of which the lien arises, or (c) other security reasonably satisfactory to Mortgagee in an amount sufficient to discharge the claim out of which the lien arises.

   (h) Should Mortgagor cause or permit any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters of or onto the lands of the State, or into the waters outside the jurisdiction of the State resulting in damage to the lands, waters, fish, shellfish, wildlife, biota, air or other resources owned, managed or held in trust or otherwise controlled by the State, without having obtained a permit issued by the appropriate governmental authorities, Mortgagor shall promptly clean up the same in accordance with all applicable federal, State and/or local statutes, laws, ordinances, rules and/or regulations.

   (i) Mortgagor hereby indemnifies, holds harmless and agrees to defend Mortgagee from and against any and all claims that arise as a result of an intentional or unintentional action or omission of Mortgagor or any previous owner and/or operator of the Mortgaged Property, resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters of or onto the lands of the State, or into waters outside the jurisdiction of the State resulting in damage to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed, held in trust or otherwise controlled by the State, or an injury or damage to any and all persons and/or property.

10. **Insurance.** Mortgagor shall keep the Mortgaged Property continuously insured against loss or damage by fire, with extended coverage and against other hazards (including, without limitation, comprehensive public liability insurance, and insurance against flood if required by the Federal Flood Protection Act of 1973 and regulations issued thereunder and such other coverages) as Mortgagee may reasonably require, with insurance companies satisfactory to Mortgagee, and in such total amount as Mortgagee may require from time to time. All policies shall be endorsed with a standard mortgagee clause in favor of Mortgagee, not subject to contribution, and shall provide for at least thirty (30) days' prior written notice of cancellation to the Mortgagee. All policies, with premiums paid and all renewal receipts therefor, shall be delivered to Mortgagee. In the event of loss, Mortgagor will give immediate written notice thereof to Mortgagee, and Mortgagee may make proof of loss if not promptly made by Mortgagor. Each insurance company concerned is hereby authorized and directed to make payment under such insurance, including return of the unearned premiums, directly to Mortgagee instead of to Mortgagor and Mortgagee jointly, and Mortgagor appoints Mortgagee, irrevocably, as Mortgagor's attorney-in-fact, to endorse any draft therefor. Mortgagee shall have the right to retain and apply the proceeds of any such insurance, at its election, to reduction of the Liabilities secured hereby, in such order or amounts as Mortgagee may elect, or to restoration or repair of the property damaged. If Mortgagee becomes the owner of the Mortgaged Property or any part thereof by foreclosure or otherwise, such policies, including all right, title and interest of the Mortgagor thereunder, shall become the absolute property of Mortgagee.

11. **Taxes, Assessments, Charges.** Mortgagor shall pay and discharge or cause to be paid and discharged, when and as the same shall become due and payable, all real estate and other taxes, assessments, sewer and water rents, all license or permit fees, levies, governmental charges, payment in lieu of any of the foregoing of any kind or nature whatsoever, and other charges and claims assessed or levied from time to time by any lawful authority upon any part of the Mortgaged Property and which shall or might have priority in lien or payment to the Liabilities secured hereby, pay or cause to be paid all ground rent reserved from the Mortgaged Property, pay or discharge, or bond, all mechanics' liens or judgments which may be filed against the Mortgaged Property, pay and discharge or cause to be paid or discharged any documentary stamp or other tax, including interest or penalties thereon, if any, which at any time may be or become payable on any Liabilities or the Note or security instruments in connection therewith, and promptly furnish to Mortgagee evidence of the due and punctual payment of all the foregoing charges.

12. **Payments by Mortgagee.** In the event Mortgagor neglects or refuses to pay the charges mentioned in Paragraph 11 above, or insurance premiums, or fails to maintain the buildings or improvements and to comply with applicable regulations, as aforesaid, Mortgagee may do so, at its sole option and without notice to Mortgagor, and all such sums, as well as costs, advanced by the Mortgagee pursuant to this Mortgage shall be due immediately from Mortgagor to Mortgagee, shall be secured by this Mortgage, and shall bear interest at the highest rate payable on any of the Liabilities (including any default or penalty rates of interest contained in any thereof) from the date of payment by Mortgagee until the date of repayment.

13. **Condemnation.** In the event of any condemnation or taking of any part of the Mortgaged Property by eminent domain, Mortgagee is hereby empowered to collect and receive all compensation and awards of any kind whatsoever (referred to collectively herein as "Condemnation Awards") which may be paid for any property taken or for damages to any property not taken (all of which Mortgagor hereby assigns to Mortgagee), and all Condemnation Awards so received shall be forthwith applied by Mortgagee as it may elect in its sole and uncontrollable discretion, to reduce any of the Liabilities (whether or not then due and payable), or to the repair and restoration of any property so taken or damaged. Mortgagor hereby empowers and authorizes Mortgagee, in Mortgagee's discretion, to settle, compromise and adjust any and all claims or rights arising under any condemnation or eminent domain proceeding relating to the Mortgaged Property or any portion thereof.

14. **Additional Covenants and Agreements.**

   (a) *Secondary Financing, Liens.* Without the prior written consent of Mortgagee, Mortgagor shall not create, nor permit to accrue, upon all or any part of the Mortgaged Property, any debt, lien or charge other than the lien of this Mortgage.

   (b) *Organizational Existence.* If Mortgagor is a corporation or partnership, it shall maintain and protect its existence and rights as such entity under the laws of the state of its organization, and its rights to own property and transact business in the State.

   (c) *Declaration of No Set-Off.* Within one (1) week after a request to do so by Mortgagee, Mortgagor shall certify to Mortgagee or to any proposed assignee of this Mortgage, in a writing duly acknowledged, the amount of principal, interest and other charges then owing on the Liabilities, whether there are any set-offs or defenses against any of them, and such other matters as Mortgagee may request.

   (d) *Financial Statement.* Mortgagor, at such times as Mortgagee may request, shall deliver to Mortgagee financial statements of Mortgagor, all in reasonable detail, prepared by an independent certified public accountant acceptable to Mortgagee and in form and content satisfactory to Mortgagee. Mortgagor agrees to keep proper books of record and account with respect to the Mortgaged Property and Mortgagor's operation thereof, in accordance with generally accepted accounting principles consistently applied, and to furnish to Mortgagee annually a statement certified by an executive officer or general partner of Mortgagor regarding the status of all existing leases, the Mortgaged Property or any portions thereof. Mortgagor agrees to make the books and accounts relating to the Mortgaged Property available for inspection by Mortgagee or its representatives upon request.

   (e) *Required Notices.* Mortgagor shall notify Mortgagee within three (3) days of the occurrence of (i) a fire or other casualty causing damage to or theft or other loss of all or any part of the Mortgaged Property; (ii) receipt of notice of condemnation of all or any part of the Mortgaged Property; (iii) receipt of notice from any governmental authority relating to the structure, use or occupancy of all or any part of the Mortgaged Property; (iv) substantial change in the occupancy or use of all or any part of the Mortgaged Property; (v) receipt of any notice from the holder of any lien or security interest in all or any part of the Mortgaged Property; or (vi) commencement of any litigation affecting the financial ability of Mortgagor or all or any part of the Mortgaged Property.

   (f) *Leases.*
   
   (i) Without the prior written consent of Mortgagee, Mortgagor shall not enter into any leases of the Mortgaged Property or any portion thereof, nor shall Mortgagor amend, modify or terminate any leases without such prior written consent.
   
   (ii) Mortgagor shall, upon request of Mortgagee, furnish Mortgagee with copies of all executed leases of the Mortgaged Property or any portions thereof.

15. **Events of Default.** The following shall constitute Events of Default hereunder:

   (a) Non-payment of any installment of principal or interest, or any other sum, due and payable under this Mortgage or any of the Liabilities, (including, without limitation, the Note);

(b) Nonperformance of or noncompliance with, by Mortgagor, for a period of fifteen (15) days after notice shall have been given to Mortgagor, of any of the other agreements, conditions, covenants, provisions or stipulations contained in this Mortgage, or by Mortgagor under any of the Liabilities or Liabilities in connection with any of them;

(c) Any assignment for the benefit of creditors made by Mortgagor;

(d) Appointment of a receiver, liquidator or trustee for Mortgagor or for any of the property of Mortgagor, insolvency of Mortgagor, or the adjudication of Mortgagor as a bankrupt or the filing by Mortgagor for, against Mortgagor, if the same shall not be discharged within sixty (60) days, of any petition for the bankruptcy, reorganization or arrangement of Mortgagor pursuant to the Federal Bankruptcy Code or any similar statute, or the institution of any proceeding for the dissolution or liquidation of Mortgagor;

(e) Any default by Mortgagor under any of the Leases affecting the Mortgaged Property and any other document executed in connection with or securing any of the Liabilities; and

(f) If any representations or warranties made by Mortgagor, whether contained in this Mortgage or in any loan documents furnished by Mortgagor to Mortgagee at any time in connection herewith, were at the time made untrue or become untrue.

For purposes of this Paragraph 15, the word "Mortgagor" shall include the persons named as Mortgagor herein, any subsequent owner of the Mortgaged Property and any other obligor under any of the Liabilities or any guarantor of any of the Liabilities.

16. **Remedies.** (a) Upon the happening of any Event of Default, all of the Liabilities shall become due and payable immediately, without notice, demand, presentment, notice of nonpayment, protest, or notice of protest, all of which are hereby expressly waived by Mortgagor, or any other action by Mortgagee, at the option of Mortgagee.

(b) When all of the Liabilities shall become due and payable, either because of maturity or because of the occurrence of any Event of Default, or otherwise, then forthwith:

(i) Foreclosure: Mortgagee may institute an action of mortgage foreclosure against the Mortgaged Property, or take such other action at law or in equity, for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the Liabilities, together with all future advances and any other sums due by Mortgagor, in accordance with the provisions of this Mortgage, including all sums which may have been loaned by Mortgagee to Mortgagor after the date of this Mortgage, and all sums which may have been advanced by Mortgagee for taxes, water or sewer rents, charges or claims, insurance or repairs to the Mortgaged Property, together with interest thereon at the highest rate payable on any of the Liabilities (including any default or penalty rates of interest in any thereof), all costs of suit, and any attorney's commission for collection which shall be five percent (5%) of the total of the foregoing sums but not less than Five Thousand Dollars ($5,000.00).

(ii) Possession: Mortgagee may enter into possession of the Mortgaged Property, with or without legal action, and by force if necessary, collect therefrom all rentals (which term shall also include sums payable for use and occupation) and, after deducting all costs of collection and administration expense, apply the net rentals to the payment of taxes, water and sewer rents, charges and claims, insurance premiums and all other carrying charges, and to the maintenance, repair or restoration of the Mortgaged Property, or on account and in reduction of the principal or interest, or both, hereby secured, in such order and amounts as Mortgagee, in Mortgagee's sole discretion, may elect, and for that purpose Mortgagor hereby assigns to Mortgagee all rentals due and to become due under any lease or leases or rights to use and occupation of the Mortgaged Property hereafter created, as well as all rights and remedies provided in such lease or leases or at law or in equity for the collection of the rentals, and agrees to confirm the aforesaid assignment by such collateral document or documents as Mortgagee may reasonably require. For the purpose of obtaining possession of the Mortgaged Property in the event of any default hereunder or under any of the Liabilities, Mortgagor hereby authorizes and empowers any attorney of any court of record in the United States, as attorney for Mortgagor and all persons claiming under or through Mortgagor, to sign an agreement for entering in any competent court an amicable action in ejectment for possession of the Mortgaged Property and to appear for and confess judgment against Mortgagor, and against all persons claiming under or through Mortgagor, in favor of Mortgagee, for recovery by Mortgagee of possession thereof, for which this Mortgage, or a copy thereof verified by affidavit, shall be a sufficient warrant, and thereupon a writ of possession may immediately issue for possession of the Mortgaged Property, without any prior writ or proceeding whatsoever and without any stay of execution. If, for any reason, after such action has been commenced, it shall be discontinued, or possession of the Mortgaged Property shall remain in or be restored to Mortgagor, Mortgagee shall have the right, for the same default, or any subsequent default, to bring one or more further amicable actions as above provided to recover possession of the Mortgaged Property. Mortgagee may bring an amicable action in ejectment and confess judgment therein before or after the institution of proceedings to foreclose this Mortgage or to enforce any of the Liabilities, or after entry of judgment therein or on any of the Liabilities or after a Sheriff's sale of the Mortgaged Property in which Mortgagee is the successful bidder, it being the understanding of the parties that the authorization to pursue such proceedings for obtaining possession and confessing judgment therein is an essential part of the remedies for enforcement of the Mortgage and the Liabilities, and shall survive any execution sale to Mortgagee.

(iii) Mortgagee may further, by summary proceedings, initiate an action for possession or otherwise dispossess any tenants, users or occupiers of the Mortgaged Property then or thereafter in default in the payment of any rent or other charge for the use thereof, and any tenants or other users or occupiers whose leasehold estates or rights to use the Mortgaged Property are subordinate to the lien of this Mortgage, whether or not such tenant, user or occupier is so in default. Mortgagee hereby irrevocably appoints Mortgagee attorney-in-fact for Mortgagor for all such purposes.

(iv) Mortgagee may, at its option, institute appropriate proceedings at law or in equity to collect the Liabilities then due (by acceleration or otherwise) or for specific performance of any of the covenants herein or in any other documents evidencing or securing any of the Liabilities (and Mortgagor acknowledges that all such covenants may be specifically enforced by Mortgagee by injunction or other appropriate equitable remedy) or to recover damages for the breach thereof.

(c) Upon a foreclosure sale, the Mortgaged Property may be sold as a single parcel or as any number of separate parcels, at Mortgagee's option, and Mortgagor for itself and anyone claiming by, through or under it further hereby agrees that Mortgagee shall in no manner, in law or in equity, be limited, except as herein provided, in the exercise of its rights in the Mortgaged Property or in any other security hereunder or otherwise appertaining to the Liabilities or any other obligation secured by this Mortgage, whether by any statute, rule or precedent which may otherwise require said security to be marshalled in any manner and Mortgagor, for itself and others as aforesaid, hereby expressly waives and releases any right to or benefit thereof.

(d) Mortgagee shall have, in addition to other rights and remedies available at law or in equity, the rights and remedies of a Secured Party under the Uniform Commercial Code. Mortgagee may elect to foreclose such of the property subject to the lien hereof as then comprise fixtures pursuant either to the laws applicable to foreclosure of an interest in real estate or to that applicable to personal property under said Uniform Commercial Code. To the extent permitted by law, Mortgagor waives the right to any stay of execution and the benefit of all exemption laws now or hereinafter in effect.

(e) In addition to the foregoing, Mortgagee shall be entitled to the appointment of a receiver. Mortgagee shall not be required to give any notice of application for the appointment of a receiver and shall be entitled to such appointment without regard to the adequacy of any security for the Liabilities or the solvency or insolvency of any person obligated for the payment thereof, and said receiver shall be entitled to take possession of the Mortgaged Property from the owner, tenants and/or occupants of the whole or any part thereof and to collect and receive the rents and profits and the value of the use and occupation of the Mortgaged Property or any part thereof from the then owner, tenants and/or occupants thereof for the benefit of Mortgagee.

(f) Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this Mortgage, as they become due, without regard to whether or not any other Liabilities shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of mortgage foreclosure, or any other action, for any default by Mortgagor existing at the time the earlier action was commenced.

(g) Mortgagee's right to declare all or any of the Liabilities immediately due and payable hereunder shall, at the option of Mortgagee, constitute a default under any other mortgage, note or notes, guaranty or other instrument from Mortgagor or any obligor or any guarantor of any of the Liabilities to the Mortgagee in effect at the time of any such default and a default under any other mortgage, note or notes, guaranty or other instrument from Mortgagor or any obligor or any guarantor of any of the Liabilities to Mortgagee shall, at the option of Mortgagee, constitute a default hereunder.

17. **Other Mortgages or Deeds of Trust.** If Mortgagor shall fail to pay any installment of principal or interest required under any other mortgage or deed of trust on the Mortgaged Property (if permitted by Mortgagee), whether subordinate or prior to the lien of this Mortgage, or shall fail to pay any real estate tax, assessment, or other governmental levy or charge, or to make any other payment required to be paid by any other mortgage or deed of trust, at the time and in the manner provided therein, or if Mortgagor shall fail to perform or observe any other term, covenant, condition or obligation required to be performed or observed by Mortgagor therein, then without limiting the generality of any other provision of this Mortgage, and without waiving or releasing Mortgagor from any of its obligations hereunder, Mortgagee shall have the right, but shall be under no obligation, to pay any such installment of principal and/or any such tax, assessment, levy, charge, or other payment, and may perform any other act or take such action as may be appropriate to cause such other term, covenant, condition or obligation to be promptly performed or observed on behalf of Mortgagor, to the end that Mortgagor's right, title and interest in, to and under such mortgage or deed of trust shall be kept unimpaired and free from default. Mortgagee and any person designated by Mortgagee shall have, and is hereby granted, the right to enter upon the Mortgaged Property at any time and from time to time for the purpose of taking any such action, and all monies expended by Mortgagee in connection therewith (including, but not limited to, attorneys' fees, legal expenses and disbursements), together with interest thereon at the highest rate payable on any of the Liabilities from the date of each expenditure, shall be paid by Mortgagor to Mortgagee forthwith upon demand by Mortgagee, and shall be secured by this Mortgage. Mortgagee shall have, in addition to any other right or remedy, the same rights and remedies in the event of default or nonpayment under any such mortgage or deed of trust as in the case of a default by Mortgagor in the payment of any installment of principal or interest due and payable hereunder.

18. **Miscellaneous.**

(a) **Mortgagee's Use Remedies.** The rights and remedies of Mortgagee provided in this Mortgage or any other Liabilities or any other security for them shall be cumulative and concurrent, may be pursued separately, successively or together and may be exercised as often as occasion shall arise. Mortgagee's failure to exercise any remedies available to it shall not constitute a waiver of the default giving rise to the right to exercise remedies nor shall it constitute a waiver of any rights or remedies of Mortgagee. No waiver by Mortgagee of any requirement hereunder shall be effective unless in writing, and waiver by Mortgagee from time to time of any requirement shall be effective only for that specified instance, and shall not be deemed to be a waiver of any other requirement or any other time.

(b) **Prepayment.** Mortgagor may prepay this Mortgage only on the terms and conditions set forth in any document evidencing the Liabilities.

(c) **Notices.** All notices, requests and demands upon the respective parties hereto shall be effective when delivered to such party at the address set forth at the beginning of this Mortgage, or if sent by United States mail, postage prepaid, registered or certified mail or by telegram, on the second business day after the day on which mailed or sent, addressed to such party as aforesaid, or to such other address as may be furnished in writing for such purpose.

ALL THAT CERTAIN piece of parcel of land, SITUATE in the Township of Upper Dublin, County of Montgomery, Commonwealth of Pennsylvania, more particularly described in accordance with a Survey and Plan thereof made by Robert N. Davenport, Registered Surveyor, dated December 20, 1954, as follows, to wit:

BEGINNING at a steel pipe set at the intersection of the Southwesterly side of Welsh Road (45 feet wide) with he Southeasterly side of Limekiln Pike (50 feet wide); extending thence; (1) along the said Southwesterly side of Welsh Road South 42 degrees 03 minutes 20 seconds East 200 feet to a steel pipe; thence (2) at right angles to Welsh Road and along line of other land of Leninia K. Simmers and Edwin H. Simmers South 47 degrees 56 minutes 40 seconds West 98.08 feet to a steel pipe; thence (3) still along line of other lands of Levinia K. Simmers and Edwin H. Simmers North 82 degrees West 93.38 feet to a steel pipe set in the said Southeasterly side of Limekiln Pike; and thence (4) along said Southeasterly side of Limekiln Pike North 8 degrees East 200 feet to the steel pipe at the first mentioned point and place of BEGINNING.

BEING the same premises which Atlantic Richfield Company, a PA Corp., by Indenture bearing date the 30th day of June 1983, and recorded in the Office for the Recording of Deeds, in and for the County of Montgomery at Norristown, PA., in Deed Book 4726 page 1760 &c., granted and conveyed unto Marlene Epstein, in fee.

UNDER AND SUBJECT to building restrictions and agreements of record.

BEING THE SAME premises which Marlene Epstein be Deed date June 20, 1985 and recorded in Montgomery County in Deed Book 4769 page 2088, granted and conveyed unto C. W. Associates (a General Partnership) in fee.

BOOK 6904 PAGE 822

PARCEL # 54-00-10180-00-8.

LOCATION of Property: 400 Limekiln Pike, Maple Glen, Pennsylvania.

Exhibit A

(d) **No Agency, Joint Venture or Partnership Between Mortgagor and Mortgagee.** This Mortgage shall not be construed as a partnership, joint venture or other business entity formation, lease or sale. Mortgagee is not now a partner or joint venturer with Mortgagor in any respect or for any purpose in the conduct of Mortgagor's business. Mortgagee is not the agent, representative, partner of or joint venturer with Mortgagor and will not act accordingly. This Mortgage shall not be construed to make Mortgagee liable to any person or persons for goods or services furnished to the Mortgaged Property, or for debts or claims accruing therefrom against Mortgagor. There shall be no contractual relation, either express or implied, between Mortgagee and any person or persons supplying any work or materials to the Mortgaged Property.

(e) **Counsel Fees.** If Mortgagee becomes a party to any suit or proceeding affecting the Mortgaged Property or title thereto, the lien created by this Mortgage or Mortgagee's interest therein, or if Mortgagee engages counsel to collect any of the Liabilities or to enforce performance of the agreements, conditions, covenants, provisions or stipulations of this Mortgage or any of the Liabilities, Mortgagee's costs, expenses and counsel fees, whether or not suit is instituted, shall be paid to Mortgagee by Mortgagor, on demand, with interest at the highest rate payable on any of the Liabilities, and until paid, they shall be deemed to be part of the Liabilities secured by this Mortgage.

(f) **Change in Tax Status of Mortgagor.** In the event of the passage after the date of this Mortgage of any law of the State, or any other governmental entity, changing in any way the laws now in force for the taxation of mortgages, or debts secured thereby, for state or local purposes, or the manner of the operation of any such taxes, so as to affect the interest of Mortgagee, then and in such event Mortgagor shall bear and pay the full amount of such taxes, provided that if for any reason payment by Mortgagor of any such new or additional taxes would be unlawful or if the payment thereof would constitute usury or render the loan or indebtedness secured hereby wholly or partially usurious under any of the terms or provisions of the Note, the Mortgage, or otherwise, Mortgagee may, at Mortgagee's option, (i) declare the whole sum secured by this Mortgage, with interest thereon, to be immediately due and payable, or (ii) pay that amount or portion of such taxes as renders the loan or indebtedness secured hereby unlawful or usurious, in which event Mortgagor shall concurrently therewith pay the remaining, lawful and non-usurious portion or balance of said taxes.

(g) **Partial Invalidity.** The unenforceability or invalidity of any one or more provisions, clauses, sentences, and/or paragraphs hereof shall not render any other provisions, clauses, sentences and/or paragraphs herein contained unenforceable or invalid.

(h) **Binding Effect.** The covenants, conditions and agreements contained in this Mortgage shall bind, and the benefits thereof shall inure to, the respective parties hereto and their respective heirs, executors, administrators, successors and assigns.

(i) **Governing Law.** This Mortgage shall be construed in accordance with and governed by the laws of the Commonwealth of Pennsylvania.

(j) **Amendment.** This Mortgage cannot be changed, modified or amended except by agreement in writing signed by the party against whom enforcement of the change, modification or amendment is sought.

(k) **Captions.** The captions preceding the text of the sections of this Mortgage are used solely for convenience of reference and shall not affect the meaning or construction of this Mortgage.

(l) **Number and Gender.** In the event that Mortgagor consists of more than one person or entity, the obligations and liabilities hereunder of each such person or entity shall be joint and several and the word "Mortgagor" shall mean all or some of them. For the purpose of this Mortgage, the singular shall be deemed to include the plural and the neuter shall be deemed to include the masculine and feminine, as the context may require.

(m) **Purchase Money Mortgage.** This Mortgage is a purchase money mortgage to the extent that any of the Liabilities are or shall be used by Mortgagor to pay all or part of the purchase price of the Mortgaged Property.

(n) **Industrial Plant Mortgage.** This Mortgage is intended to be an industrial plant mortgage within the broadest interpretation of the "industrial plant mortgage doctrine" under the laws of the Commonwealth of Pennsylvania.

ALTERNATIVE — Subparagraph (o) (Delete one)

(o) **Commercial Loan.** Mortgagor represents and warrants that the loan secured by this Mortgage was obtained solely for the purpose of carrying on or acquiring a business or commercial investment.

OR

**Future Advance Mortgage.**

(o) This Mortgage is a construction loan mortgage and secures future advances.

WITNESS the due execution hereof the day and year first above written.

WITNESS OR ATTEST:                                  MORTGAGOR: MAPLE GLEN JIFFY WASH, INC.

_See Notary_                                        _Charles Pappas_, President (SEAL)

                                                    _Marilyn Pappas_, Sec/Treas. (SEAL)

**INDIVIDUAL ACKNOWLEDGMENT**

COMMONWEALTH OF PENNSYLVANIA :
                                  : ss
COUNTY OF _____ :

On this _____ day of _____, 19___, before me, a Notary Public in and for the Commonwealth of Pennsylvania personally appeared _____, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the foregoing Mortgage and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                                    _____
                                                    NOTARY PUBLIC

My Commission Expires:

[Seal: Maple Glen Jiffy Wash, Incorporated Seal]

**CORPORATE ACKNOWLEDGMENT**

COMMONWEALTH OF PENNSYLVANIA :
                                  : ss
COUNTY OF Montgomery           :         Maple Glen Jiffy Wash, Inc.

On this 9th day of May, 19___, before me, the undersigned officer, personally appeared Charles Pappas / Marilyn Pappas, Sec/Treas. who acknowledged himself/herself to be the Vice President of Maple Glen Jiffy Wash, Inc., a corporation, and that he/she as such (Vice) President, being authorized to do so, executed the foregoing Mortgage for the purposes therein contained by signing the name of the corporation by himself/herself as (Vice) President.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                                    _Margaret Ann McCoy_
                                                    NOTARY PUBLIC
My Commission Expires: August 23, 1996

NOTARIAL SEAL
MARGARET McCOY C.PAY, Notary Public
Jenkintown Twp, Montgomery Co.
My Commission Expires Aug. 23, 1996

**PARTNERSHIP ACKNOWLEDGMENT**

COMMONWEALTH OF PENNSYLVANIA :
                                  : ss
COUNTY OF _____ :

On this, the _____ day of _____, 19___, before me, the undersigned officer, personally appeared _____, who acknowledged himself/herself to be a General Partner of _____, a partnership, and that he/she as such General Partner executed the foregoing Mortgage for the purposes therein contained by signing the name of the partnership by himself/herself as Partner.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                                    _____
                                                    NOTARY PUBLIC
My Commission Expires:

RETURN TO: J. WOOD
FIDELITY BANK, N.A.
123 S. BROAD STREET
PHILADELPHIA, PA 19109

The undersigned hereby certifies that the address of aforementioned mortgagee is:
FIDELITY BANK, NATIONAL ASSOCIATION
Broad and Walnut Streets
Philadelphia, PA 19109

BOOK 6304 PAGE 823

_____