EXHIBIT A

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 2                           - - -

 3    EXECUTIVE CAR WASH       :
      OF MAPLE GLEN            :
                               :
            PLAINTIFF          :
 4                             :
              v.               :
                               :  NO. 02-CV-3747
 5    ENVIRONMENTAL, INC.      :
              and              :
                               :
      ENVIRONMENTAL HAZARD     :
 6    SERVICES, INC.           :
                               :
            DEFENDANTS         :
 7

                             - - -
 8
                      FEBRUARY 4, 2004
                             - - -
 9

10
                    Oral deposition of JOHN
11    CARNEY, taken pursuant to notice,
12    was held at the law office of Kaplin,
13    Stewart, Meloff, Reiter & Stein, P.C.,
14    350 Sentry Parkway, Building 640, Blue
15    Bell, Pennsylvania 19422 commencing at
16    10:12 a.m. on the above date, before
17    Stanley D. Krevitz, Jr., a court reporter
18    and notary public in the Commonwealth of
19    Pennsylvania.
20
21
22                           - - -
           ESQUIRE DEPOSITION SERVICES
23        1880 John F. Kennedy Boulevard
                    15th Floor
24        Philadelphia, Pennsylvania 19103
                  (215) 988-9191
```

16

1   Laboratories, you changed the name to
2   become EHS Environmental; is that
3   correct?
4           A.      Yes.
5           Q.      So they're the same
6   corporate structure, though; is that
7   correct?
8           A.      Yes.
9           Q.      You are the sole
10  shareholder?
11          A.      Yes.
12          Q.      Are there any other officers
13  of EHS Environmental other than yourself?
14          A.      No.
15          Q.      Now, that was true of
16  Environmental Hazard Services, Inc., as
17  well, was it not?
18          A.      Yes.
19          Q.      So EHS Laboratories, which
20  became EHS Environmental, continued to do
21  the same sort of Phase 1 evaluations or
22  Phase 1 work that Environmental Hazard
23  Services, Inc., did, did they not?
24          A.      Yes.

17

```
 1         Q.      Called on the same customers
 2  that they had before?
 3         A.      Yes.
 4         Q.      Sir, this case began as a
 5  Complaint filed in federal court, it's a
 6  matter of public record.  You've seen a
 7  copy of this Complaint; is that correct?
 8         A.      Yes.
 9         Q.      And an Answer was filed by
10  your former counsel on or about August 2,
11  2002.  Did you see a copy of that before
12  it was filed?
13         A.      I don't believe so.
14         Q.      Did you discuss this Answer
15  with your former counsel before it was
16  filed?
17         A.      Yes, I believe so.
18         Q.      Did you discuss with him the
19  items, without going into as to what you
20  discussed, the items in the Complaint and
21  the fact that an Answer was going to have
22  to be filed?
23         A.      Yes.
24         Q.      And he asked you how to, you
```



```
 1  know, answer these allegations and you
 2  discussed these allegations with him?
 3  Again without going into what was said.
 4          A.      Yes.
 5          Q.      Now, I notice in response --
 6  could you read paragraph number 4 for the
 7  record on the first page?
 8          A.      "Upon information and belief
 9  Environmental is the successor to
10  Hazard."
11          Q.      And your answer on number 4
12  reads, for the record, please?
13          A.      "Admitted."
14          Q.      Okay.  Is that correct?
15          A.      Yes.  It's not accurate, but
16  it's correct.
17          Q.      Why do you say "it's not
18  accurate"?
19          A.      Because in all these
20  Complaints they named the company as
21  "Environmental, Inc.," when it was "EHS
22  Environmental, Inc."
23          Q.      All right.  Let's try that
24  again.  The current company is not
```



40

1  Q. And anything that was in the
2  file you gave to your attorneys?
3  A. Yes.
4  Q. As a matter of practice
5  during that time period, were your
6  employees, such as Mr. Berkes or Aquilino
7  who were performing these walk-through
8  inspections, instructed to prepare field
9  notes and have those field notes in the
10 file?
11 A. I don't recall.
12 Q. In the document further it
13 says, under "Walkover Survey," that "The
14 inspection of the subject property was to
15 determine what environmental impactors,
16 if any, exist." The phrase
17 "environmental impactors," are you
18 familiar with that phrase?
19 A. Yes.
20 Q. What does it mean?
21 A. Environmental conditions
22 that would affect the property,
23 renovations or demolitions.
24 Q. How do renovations or

45

1       A.    Yes.

2       Q.    And you had done business

3  with them before?

4       A.    I don't know.

5       Q.    First of all, what was

6  Atlantic Petroleum Technologies asked to

7  do?

8       A.    I don't know.

9       Q.    Who asked them to do it?

10      A.    I believe Richard Berkes.

11      Q.    Do you know why they were

12 contracted to do whatever it is that they

13 did?

14      A.    No.

15      Q.    You are aware they are the

16 individuals who performed -- they

17 performed a site survey as well; is that

18 correct?

19      A.    Well, they produced a report

20 and a bill, so I assume they did.

21           MR. KAPUSTIN:  We can mark

22 this as Carney-3, Carney-4 and

23 Carney-5.

24              - - -



46

```
 1              (Carney-3, Carney-4 and
 2      Carney-5 were marked for
 3      identification.)
 4              - - -
 5  BY MR. KAPUSTIN:
 6          Q.      I show you exhibits 3, 4 and
 7  5.  Have you seen these exhibits before?
 8          A.      Yes.
 9          Q.      All right.  And your
10  previous testimony was you got a bill and
11  a report from this entity Atlantic
12  Petroleum Technologies.  Is that bill and
13  report included in there?
14          A.      Yes.
15          Q.      And, for the record, can you
16  say which document is the bill?
17          A.      Carney-5 is the bill.
18          Q.      All right.  And which
19  document is the report?
20          A.      Carney-4.
21          Q.      And Carney-3 is a fax; is
22  that correct?
23          A.      Yes.
24          Q.      All right.  And you've seen
```



Esquire Deposition Services

47

1   that before?
2       A.   Yes.
3       Q.   Had you ever seen that
4   before this litigation?  Had you seen
5   this in 1992?
6       A.   I don't recall.
7       Q.   Carney-3, it says it's a
8   fax, but it refers to another document.
9   It says it's a two-page document?
10      A.   Yes, it does.
11      Q.   Do you know what was
12  included with that?
13      A.   No, I do not.
14      Q.   Because that's dated
15  December 4 I believe and the others are
16  later; is that correct?
17      A.   Yes.
18      Q.   The fax, Carney-3, it's to
19  Berkes from John Secker, S-e-c-k-e-r.
20  Did you understand him to be an employee
21  of Atlantic Petroleum Technologies?
22      A.   I'm not sure who he is.
23      Q.   Have you ever met Mr.
24  Secker?



48

1    A.    Not that I know of.
2    Q.    Do you recall speaking with
3  him on the telephone or doing business
4  with him at any point in time?
5    A.    No.
6    Q.    Since you got this report
7  and paid this bill to Atlantic Petroleum
8  Technologies, did you ever use them
9  again?
10    A.    Not that I'm aware of.
11    Q.    Have you spoken to
12  Mr. Secker recently?
13    A.    No.
14    Q.    Do you know where he can be
15  located?
16    A.    No.
17    Q.    Do you know if your counsel
18  has spoken to Mr. Secker?
19    A.    I'm not sure.
20        MR. HAMILTON:  For the
21      record, Steve, we subpoenaed him
22      to testify on February 19, I think
23      you got a copy of the subpoena.
24        MR. KAPUSTIN:  I understand


Esquire Deposition Services

83

1           marked it as "9A."
2  BY MR. KAPUSTIN:
3       Q.    So you're saying that it was
4  document 9A.  And specifically what
5  language are you relying upon?
6       A.    "I called Bob Bradshaw to
7  inquire of the status of the UST removal
8  date.  Both tanks have been removed from
9  the ground and the excavation has been
10 backfilled.  No notification was given to
11 the department.  Atlantic has history of
12 failure to notify."
13      Q.    Do you recall, looking at
14 the top of that document, this was in
15 your file from the 1992 Phase 1?
16      A.    Yes.
17      Q.    Do you recall any discussion
18 with him, or anything, that the address
19 on there was 1400 Dreshertown Road, which
20 is Limekiln Pike and Dreshertown Road?
21      A.    No.
22      Q.    Are you aware that this is
23 not the address of the property in
24 question?



84

1   A.   I am now.
2   Q.   Going back to 2000, are you
3 the one who did the site assessment, the
4 visual inspection of the site?
5   A.   Yes.
6   Q.   Other than the report, did
7 you maintain any separate notes of what
8 happened or what you saw at the property?
9   A.   Yes.
10  Q.   And to the best of your
11 knowledge you gave those to counsel?
12  A.   Yes.
13  Q.   Turning to Carney exhibit 8,
14 page 10. Under paragraph 7, "Registered
15 Underground Storage Tanks." Where it
16 says "Updated: July, 1999" are you
17 referring to a specific document?
18  A.   Yes.
19  Q.   And what document is that?
20  A.   The documents found in
21 section 5.
22  Q.   At the top of the page?
23  A.   No, that's section --
24  Q.   Of the attachments, okay.



```
                                                              95
 1         A.     Visual inspection.
 2         Q.     Now, is that the top of the
 3   tank or the bottom of the tank or
 4   somewhere else?
 5         A.     The top of the tank.
 6         Q.     And you say this "is
 7   possibly why the magnetic survey
 8   performed for Environmental Hazard
 9   Services, Inc., did not find the tanks in
10   1992." I'm saying you, what do you base
11   that on?
12         A.     I've been told that the
13   magnetic detectors, the metal detectors,
14   depending on what kind of substrate they
15   have to penetrate, are only good down to
16   two or three feet.
17         Q.     And who told you that?
18         A.     I don't recall.
19         Q.     Are there different types of
20   Fero metal detectors? And by that I'm
21   not talking about different brands, but
22   did different types of them have
23   different levels of, for want of a better
24   term, depth perception or depth
```



96

1  reception?
2      A.    I don't know.
3      Q.    Some of them could be
4  stronger than others and have different
5  capabilities than others; is that
6  correct?
7      A.    Yes
8      Q.    When this was going on in
9  2000, did you have any contact with
10 Mr. Berkes to find out what happened?
11     A.    No.
12     Q.    Would you go back to the
13 first page of that document, please?
14          MR. HAMILTON:   Which one?
15          MR. KAPUSTIN:   The last
16     exhibit, number 10, please.
17          THE WITNESS:   (Witness
18     complies).
19 BY MR. KAPUSTIN:
20     Q.    In the first page of this
21 document, under the third paragraph it
22 says, "Contaminated soil was evident on
23 top of the tanks, on the sides of the
24 tanks, and below the tanks." Now, these





**ATLANTIC PETROLEUM TECHNOLOGIES, INC.**
DUTTON MILL INDUSTRIAL PARK
396 TURNER WAY
ASTON, PA 19014

DATE: 12-4

TIME: 3:45

HANDLING: ( ) URGENT
( ) ROUTINE

FAX NUMBER: _____

FACSIMILE MESSAGE FORM

Page 1 of 2 pages (including this cover sheet).
If you fail to receive all of the pages or if either machine fails, please call.

Our FACSIMILE number is 215-497-6739
Our TELEPHONE number is 215-497-6729

TO: RICHARD BERKES

FROM: JOHN SECKEL
ATLANTIC PETROLEUM TECHNOLOGIES, INC.

COMMENTS:

THE SITE APPEARS TO BE CLEAR OF UNDERGROUND STORAGE TANKS, EXCEPT FOR A 500 GALLON FUEL OIL TANK IN THE REAR. THE OIL WATER SEPERATORS COULD BE CAUSE FOR CONCERN.

EXHIBIT
2-4-04
Carney - 3
SK



**Atlantic Petroleum Technologies, Inc.**

*Corporate Office:*
Dutton Mill Industrial Park
396 Turner Way
Aston, PA 19014
Tel: (215) 497-6729
Fax: (215) 497-6739

*Regional Offices:*
Boca Raton, FL
Hartsville, SC

Letter# APT 92-357

December 7, 1992

Environmental Hazards Services Inc.
2316 Meetinghouse Rd.
Boothwyn, PA  19061

ATTENTION: Richard Berkes

RE:  Executive Car Wash
     of Maple Glen.

Dear Richard:

Atlantic Petroleum Technologies conducted a site survey at the above referenced site on 12/4/92. The purpose of the survey was to locate any possible underground storage tanks. A Fero magnetic locator was used to identify buried ferrous metal objects.

The storage tanks used for commercial purposed have been removed at some prior date, unestablished at this point.

A 500 to possibly a 1000 gallon heating oil tank exists behind the building and is in use. This tank is currently unregulated.

There are oil-water separators in the rear of the building with oil on the surface of two manholes out of four. This could be cause for concern. They appear to be of concrete construction and are in use.

Thank you for the opportunity to be of service. Please call with any questions you may have.

Sincerely yours,

ATLANTIC PETROLEUM TECHNOLOGIES, INC.

John C. Secker
Operations Manager

JCS/gam



EXHIBIT
2-4-04
Carney-4
SK



**Atlantic Petroleum Technologies, Inc.**

*Corporate Office:*
Dutton Mill Industrial Park
396 Turner Way
Aston, PA 19014
Tel: (215) 497-6729
Fax: (215) 497-6739

*Regional Offices:*
Boca Raton, FL
Hartsville, SC

INVOICE

TO: Environmental Hazards Service
2316 Meetinghouse Rd.
Boothwyn, PA 19061

DATE: December 7, 1992
INV #: 1103
JOB #: P172PA
TERMS: Due Upon Receipt

ATTENTION: Richard Berkes

RE: Site Survey

TOTAL AMOUNT DUE THIS INVOICE      $295.00

For 12-92-4784



EXHIBIT
2-4-04
Carney-5
SK

## DEPARTMENT OF ENVIRONMENTAL RESOURCES
## BUREAU OF WATER QUALITY MANAGEMENT
### FIELD NARRATIVE FORM

**NAME:** Atlantic L.U.S.T.
**DATE:** 6/3/88
**COUNTY:** Montgomery
**PROGRAM:** IW
**SITE ADDRESS/LOCATION:** 1400 Dreshertown Rd (Limekiln Pike + Dreshertown Rd)
**MUNICIPALITY (TWP, BORO):** Upper Dublin

**ACTIVITY:** ☐ PLANNING  ☐ COMPLAINT  ☐ CONSULTATION  ☐ INVESTIGATION  ☐ PROGRAM EVALUATION  ☐ ENFORCEMENT  ☐ INSPECTION  ☐ OTHER

**FOLLOW UP ACTIVITY:** ☐ NONE  ☐ REINSPECTION  ☐ LETTER  ☐ RETURN CALL  ☐ OTHER

**NARRATIVE:**

Marcy,

Tony Caroso of Atlantic 339-2603 called to inform us of two tank test failures at the above location. 1 Super Unleaded + 1 Regular Unleaded failed and are being pumped out. Bob Bradshaw of Atlantic 339-3568 will be handling the case and will call prior to tank removal.

Rich B

---

7/7/88

13:20 I called Bob Bradshaw to inquire of status of the UST removal date. Both tanks have been removed from the ground and the excavation has been backfilled. No notification was given to Dept. Atlantic has history of failure to notify. VL will be sent outlining site require remediation requirements.

**EXHIBIT**
2-4-04
Carney - 9A
SK