# EXHIBIT "F"

<u>Lease Purchase Agreement</u>

THIS AGREEMENT is made as of the 15th day of April between MAPLE GLEN JIFFY WASH, INC., a Pennsylvania Corporation, a/k/a THE EXECUTIVE CAR WASH OF MAPLE GLEN, INC., and CHARLES PAPPAS, Individually (collectively referred to as "Seller") and Sannco Ventures LLC, and/or Nominees and MICHAEL SANNUTI, Individually (collectively referred to as "Buyer"). In consideration of the mutual promises contained herein and intending to be legally bound, the parties agree as follows:

## ARTICLE 1: LEASE

1.1   *Premises.* Seller hereby leases to Buyer, which hereby rents from Seller, ALL THAT CERTAIN lot or piece of ground together with the buildings and all improvements erected thereon, as more fully described on the legal description attached hereto as Exhibit "A" and made a part hereof (hereinafter called "the Premises") known as 601 Welsh Road, a/k/a 400 Limekiln Pike, Upper Dublin Township, Montgomery County, Pennsylvania, and including all inventory and equipment ("the Equipment") situated thereon and associated with the car wash business conducted on the Premises (hereinafter called "the Business").

1.2   *Use.* The Premises may be used and occupied for the conduct of the Business.

1.3   *Term.* The term of Buyer's lease of the Premises hereunder (the "Term") shall commence on February 1, 1999 and shall expire at midnight on the Closing Date (hereinafter defined), unless otherwise extended or terminated pursuant to the terms hereof, and unless extended by the terms of this Agreement, or by mutual agreement of the parties shall expire at midnight on July 31, 2000.

1.4   *Rent.* Buyer shall pay to Seller the amount of Fifty Thousand dollars ($50,000.00), in cash or property receipt of which is hereby acknowledged for the lease term of February 1, 1999 to July 31, 2000 and is not refundable ~~if buyer defaults, however, if seller defaults for any reason, then seller must return monies applied to the property by the buyer.~~

UNDER ANY
CIRCUMSTANCE

4/20/99

1

1.5    *Maintenance, alterations and Repairs.*

(a)    Buyer shall be responsible, at its sole expense, for the maintenance, operation and repair of the Premises, including all lawns, shrubbery and paved areas, and the Equipment, and shall at all times keep the sidewalks, driveways and parking areas on the Premises clean and free of snow or ice accumulation.  Should Seller hereafter be required by law of other duly constituted authority to make any alterations, improvements or other changes to the Premises or the Equipment, Buyer shall perform such changes at its sole expense.

(b)    Upon receipt of Seller's written consent, which shall not be unreasonably withheld and shall be deemed given if not refused in writing within five (5) business days following Buyer's written request therefor, Buyer, at its sole discretion and at its expense, may make alterations or modifications to the Premises which Buyer may deem appropriate.  Buyer further agrees, as a condition of this lease, to spend not less than the sum of Fifty Thousand Dollars ($50,000.00) on the improvements to the Premises and in the event of default by buyer, then said improvements shall not reimbursed, however, if improvements  seller defaults, the seller must reimburse buyer of all reasonable improvement costs, *UP TO A TOTAL OF $100,000, INCLUDING DEPOSIT.*

(c)    Buyer shall pay all bills incurred by it in connection with the maintenance, alteration or repair of the Premises or the Equipment by the date such bills are due and payable, and, Buyer agrees to pay all real estate taxes, assessments, and all other costs and expenses relating the Premises, it being understood that this Lease is a "triple-net" lease, with Buyer agreeing to be responsible for and to pay all expenses.

(d)    Upon the termination or expiration of this Agreement pursuant to Section 2.11, Buyer shall promptly surrender the Premises and the Equipment in good condition, reasonable wear and tear excepted.

(e)    No alteration shall be undertaken by Buyer until it shall have first secured and paid for all permits and authorizations of all municipal departments and governmental subdivisions having jurisdiction. Any alterations by Buyer shall be made promptly (unavoidable delays expected) and in a good workmanlike manner and in compliance with all applicable permits, authorizations and building and zoning laws and with all other requirements of all governmental authorities having jurisdiction and of any national or

2

local board of fire underwriters or any other body hereafter exercising functions similar to those of any of the foregoing.

(f)     The Premises shall at all times be free of liens for labor and material supplied or claimed to have been supplied to the Premises in conjunction with alterations performed by or for Buyer. If any mechanics' lien or other liens, charges or orders for the payment of money shall be filed against Seller, the Premises or any portion thereof on account of any alterations, maintenance or repair performed by or for Buyer, Buyer shall indemnify and save harmless Seller against and from all costs, liabilities, suits, penalties, claims and demands, including reasonable counsel fees resulting therefrom, and at Buyer's own cost and expense cause the same to be discharged of record or bonded within ninety (90) days after written notice from Seller to Buyer of the filing thereof. Buyer shall not permit any mechanics' or similar liens to remain upon the Premises on account of any such alterations, modifications or repairs. Buyer may, however, contest the validity of any such lien or claim, provided Buyer shall upon demand give Seller reasonable security to insure payment and to prevent any sale, foreclosure or forfeiture of the Premises by reason of nonpayment. Upon the final determination of the validity of any such lien or claim, Buyer shall immediately pay any judgment or decree rendered against Buyer, Seller or the Premises, with all proper costs and charges and shall cause the lien to be released of record without costs to Seller.

1.6     *Compliance with Law.* Buyer shall at all times comply with the requirements of all constituted public authorities and with the terms of any state or federal statute or local ordinance or regulation applicable to the Premises and the Equipment or Buyer's use thereof.

1.7     *Insurance.*

(a)     During the Term, Buyer shall maintain public liability insurance with a minimum single limit for personal injury of $1,000,000.00 for any one occurrence and of $500,000.00 for property damage for any one occurrence. Such insurance shall name both Buyer and Seller as insureds, and shall not be cancelable with out at least thirty (30) days written notice to Seller.

(b)     During the Term, Buyer shall maintain fire and extended coverage insurance on the Premises in an amount at least equal to the full replacement value of the Equipment and all improvements erected upon the Premises as such

3

improvements may exist from time to time, with insurance companies licensed to do business in the Commonwealth of Pennsylvania. Such insurance shall name Seller and Buyer as co-insureds as their interests may appear and shall provide that the proceeds of any loss shall be payable to Buyer and Seller jointly. Buyer shall, at its election, apply such proceeds either to the payment of the Purchase Price (hereinafter defined) at Closing, or to defray the cost of restoration of the Premises and the Equipment.

(c)    Upon execution of this Agreement, Buyer shall provide Seller with certificates of insurance in a form acceptable to Seller to the extent of the aforementioned limits and amounts, which certificates shall be subject to cancellation only upon thirty (30) days notice to Seller.

1.8    *Casualty.* Damage to or destruction of the Equipment or the improvements on the Premises or any portion thereof by fire or other casualty shall not terminate this Agreement, entitle Buyer to surrender the Premises, or to any abatement of or reduction in rent, or otherwise affect the respective obligations of Seller or Buyer.

1.9    *Inspection.* Seller or its agents or employees shall have the right to inspect the Premises and to enter the Premises at all reasonable times for the purpose of inspecting the Premises and the Equipment and making any repairs that may be necessary to cause the Premises and the Equipment to comply with the laws, rules or regulations of any governmental authority having jurisdiction or that may become necessary by reason of the failure of Buyer after notice provided in Subsection 1.10(b) of this Agreement to maintain the Premises and the Equipment as required under the terms of Subsection 1.5(a) of this Agreement.

1.10    *Default.* The occurrence of any one or more of the following events shall be considered an "Event of Default" hereunder:

(a)    The failure of Buyer to pay an installment of rent or any other sum payable by Buyer hereunder within five (5) days after receipt from Landlord of written notice of nonpayment thereof; provided, however, that if Seller shall have give Buyer two (2) notices of nonpayment in any calendar year it shall thereafter, for the remainder of such calendar year, be an Event of Default if Buyer shall fail to pay any installment of rent or any other sum payable hereunder when due.

4

(b) The failure to perform, violation or breach by Buyer of any of the terms, covenants or conditions hereof, which failure, violation or breach shall continue unremedied by Buyer for a period of ten (10) days after written notice thereof shall have been given to Buyer by Seller, of for such additional period as may necessary to remedy such failure, violation or breach with due diligence.

(c) The insolvency of Buyer as evidenced by an assignment by Buyer for the benefit of creditors, a Petition in Bankruptcy being filed by Buyer, the adjudication of Buyer as a bankrupt, the filing against Buyer of a petition for appointment of a receiver of all or any part of Buyer's assets or property, either in bankruptcy or other insolvency proceedings, unless such proceedings shall be stayed or dismissed within sixty (60) days after the filing thereof, or the levy against any portion of the assets or property of Buyer by the Sheriff or other designated authority of any governmental subdivision having jurisdiction therefor.

1.11   *Effect of an Event of Default*. Upon the occurrence of any Event of Default, Seller shall have the remedies set forth in Section 2.11 hereof.

1.12   *Quiet Enjoyment*. Seller covenants that Seller has the right and authority to enter into this Agreement and that subject to covenants, easements and restrictions of record and the zoning, building and other ordinances or requirements of the Township of Upper Dublin, Montgomery County, Pennsylvania, Buyer may peaceably and quietly have, hold and enjoy the Premises, provided that Buyer performs and fulfills all the terms, covenants and conditions of this Agreement.


## ARTICLE 2:SALE

2.1   *Sale of the Premises and Business*. Seller agrees to sell, assign, transfer, and convey to Buyer, and Buyer agrees to purchase from Seller, upon the terms and conditions herein set forth, good, marketable, and insurable fee simple title to the Premises and the Business located thereon.

5

Exec 000323

2.2    *Purchase Price.*

    (a)    Amount of Purchase Price. The total purchase price and first year's nonrefundable rent to be paid by Buyer to Seller for the Premises and the Business (the "Purchase Price") shall be the sum of Five Hundred and Fifteen Thousand Dollars ($515,000.00). The Buyer, upon signing of this agreement shall pay to Seller the sum of One Hundred Thousand Dollars ($100,000.00) in cash, certified check or property, receipt of which is hereby acknowledged, and the balance of Four Hundred and Fifteen Thousand Dollars ($415,000.00) in cash or certified check at the time of closing.  The Purchase Price is allocated as follows:

| | |
|---|---|
| Purchase Price of Equipment & Business | $265,000.00 |
| Purchase Price of Premises | $250,000.00 |
| Total | $515,000.00 |

    (b)    Payment of Purchase Price.  The Purchase Price shall be paid to the Seller as follows:

        (i)    Cash or check or property provided by Buyer to Seller on or before April 23, 1999 in the amount of One Hundred Thousand Dollars ($100,000.00), receipt of which is acknowledged upon signing of this Agreement by Seller not refundable if Buyer defaults, however, if Seller defaults for any reason, then Seller must return all deposit monies to Buyer within 30 days.

2.3    *Closing Documents to be Delivered by Seller.* At Closing, Seller shall deliver to Buyer all of the following:

    (a)    Deed.  A special warranty deed (the "Deed"), duly executed, acknowledged, and in recordable form, conveying good, insurable and marketable title to the Premises to Buyer.

6

(b)    Bill of Sale. A bill of sale in form acceptable to Seller, duly executed, assigning and transferring title to the inventory, equipment or other personal property attached to or located on the Premises or the Improvements thereto to Buyer and warranty that such title is good, marketable and unencumbered.

(c)    Miscellaneous. Such other documents as reasonably may be required to fulfill Seller's obligations hereunder and effectuate the sale contemplated hereby.

2.4    *Closing.*

(a)    Place of Closing. The closing of this transaction ("Closing") shall be held at such place as the parties hereto may agree upon.

(b)    Closing Date. The "Closing Date" shall be on or before July 1, 2000.

2.5    *Representations and Warranties of Buyer.* Buyer makes the following representations and warranties to Seller, each of which representations shall survive Closing for the period of any statue of limitations applicable to it and shall not merge in the Deed:

(a)    Neither the execution and delivery of this Agreement nor compliance with the terms and conditions of this Agreement by Buyer will breach or conflict with any agreement or instrument to which Buyer is a party or by which it is bound, or constitutes a default thereunder; and the execution and delivery of this Agreement will not be in violation of or conflict with any of the terms of any law or regulation, order, judgment or decree applicable to Buyer, or to which Buyer is a party, or by which Buyer is bound.

(b)    There is no action, suit or proceeding pending, or, to the actual knowledge of Buyer, threatened against Buyer or any of them with respect to their ability to enter into this Agreement or complete the transactions contemplated hereby in any court or before any federal, state, county, or municipal department, bureau, commission, board or agency or other governmental instrumentality.

Exec 000325

(c)    During the Term of Buyer's lease of the Premises, Buyer will not store, treat or otherwise dispose of Hazardous Substances upon the Premises; provided, however, that Buyer may use those Hazardous Substances commonly employed in connection with the Business and Premises in a manner consistent with all governmental rules and regulations pertaining thereto.

(d)    Buyer agrees to indemnify, defend, save and hold harmless Seller, its heirs, successors and assigns (the "Indemnitees") from and against, and to reimburse the Indemnitees with respect to, any and all claims, demands, causes of action, loss, damage, liabilities, costs and expenses (including, reasonable attorney's fees and expenses, court cost and costs of appeals) asserted against or incurred by the indemnitees by reason of or arising out of a breach of any of the representations and warranties of Buyer set forth in this Agreement, provided that the loss or damage shall be fore direct loss and damages sustained and not consequential damages. Buyer shall not be responsible for any environmental claims, which have been deemed to have occurred prior to February 1, 1999.

2.6    *Zoning Classification.* Seller states that the zoning classification of the Premises is Shopping Center (SC) and the most recent use of the Premises for a car wash is permitted by current, applicable zoning laws. Seller certifies that there are not outstanding notices received by it or of which Seller has actual knowledge, of any uncorrected violation of any housing, building, safety or fire ordinances applicable to the Premises.

2.7    *Conditions of Premises.* Buyer acknowledges and understands that Seller is not making any warranty, express or implied, with respect to the quality, condition or fitness for a particular purpose of any of the Premises or business including, without limitation, equipment and fixtures, and Buyer accepts all of the Premises and business "AS IS" and "WITH ALL FAULTS" IN THE CONDITION EXISTING ON THE DATE OF SIGNING THIS AGREEMENT AND THROUGH THE CLOSING DATE AND, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, SELLER EXPRESSLY DISCLAIMS TO BUYER AND TO ALL THIRD PARTIES ANY AND ALL WARRANTIES CONCERNING THE CONDITION OF THE PREMISES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, (A) ANY IMPLIED OR EXPRESS WARRANTY OF QUALITY, CONDITION OR MERCHANTABILITY, AND (B) ANY IMPLIED OR EXPRESS WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE.

8

2.8    *Release and Indemnity.*

(a) Buyer's Acknowledgement. It is the intent of the parties hereto, and Buyer so acknowledges, that from and after the execution of this Agreement, Seller shall bear no liability of any kind whatsoever arising form or associated in any way with the Premises and Business that are the subject of this Agreement, except for any liability that occurred prior to February 1, 1999. Therefore, Buyer agrees to release and indemnify Seller pursuant to the following provisions.

(b) Release and Indemnity. Buyer for itself, its successors and assigns, hereby releases and forever discharges Seller, its partners, employees, servants, agents and their respective successors and assigns (the exonerate, indemnify, defend, protect and save the Released Parties harmless from and against any an all claims, losses, liabilities, demands, causes of action, suits judgments, orders, damages, penalties, obligation, costs, including reasonable attorneys' frees, and expenses of every kind and nature, whether or not covered by insurance (collectively "Claim"), which Buyer may have against the Released Parties, arising from or associated in nay way with the Premises and the business which are the subject of this Agreement, whether or not such Claims arose or accrued before the date of this Agreement or arise or accrue hereafter, and regardless of whether such claims are caused solely or in part by the negligence of misconduct of the Released Parties, including but not limited to claims arising out of or in connection with (i) loss of life, bodily injury, personal injury or damages to person, (ii) damages to or loss of personal property or real property, (iii) any violation of any statues, laws, ordinances, codes, rules or regulations of any government entity, (iv) any contamination or adverse effects on the environment, (v) other casualty or harm to air, ground water or other natural resources, the property or off-site property, and (vi) any costs of investigation, clean-up, preventative, restorative or mitigating measures, consultants and expert witnesses, court costs, administrative costs, costs of appeals and all fines and penalties that arise from or are in any way associated with the Premises and the Business that are the subject of this Agreement. This release and indemnity shall survive termination of this Agreement and delivery of the deed and any other instruments associated with the conveyance of the Premises and the Business to the Buyer. The Buyer is not responsible for any liability or claims prior to February 1, 1999

9

and the Seller will allow all inspections as required by buyers lender.

(c) Statutory Waiver. With respect to any and all claims brought against a Released party by an employee of Buyer, Buyer for itself, its successors and assigns, hereby expressly agrees to waive any provision of the Worker's compensation Act whereby Buyer could otherwise preclude Buyer's joinder as an additional defendant, or avoid liability in any action at law or in equity or otherwise, where Buyer's employees, their heirs, assigns or anyone otherwise entitle to receive damages by reason of injury or death, brings and action against any Indemnified Party. The indemnification obligations accepted by Buyer under this Section shall not be limited in any way by any limitations on the amount of or type of damages, compensation or benefits payable by Buyer pursuant to the Worker's Compensation Act or Disability Benefit Act or any other employee benefit law, rule or regulation. Buyers agrees and acknowledges that by undertaking to indemnify a Released Party under this Section, Buyer is expressly undertaking indemnification liability by written contact pursuant to Section 303(b) of the Workers Compensation Act.

2.9     *Closing Documents to be Delivered by Buyer.* At closing, Buyer shall deliver or caused to be delivered to seller the Purchase Price, as adjusted in accordance with the provisions of this Agreement, and all other documents reasonably required for the consummation of the transaction contemplated hereunder.

2.10    *Taxes.* Transfer Taxes. Seller and Buyer shall each pay one-half (1/2) of any and all realty transfer taxes or conveyancing fees due any local or state governmental entity or authority in connection with the recording of the Deed or otherwise in connection with the consummation of the transactions contemplated by this Agreement.

2.11    *Default of Buyer.* Seller shall provide (20) twenty days written notice of default to Buyer. If, on the Closing Date, Buyer shall fail to perform its obligation hereunder in accordance with the terms of this Agreement Seller may either (i) terminated this Agreement, whereupon the Seller shall retain all rent and deposits theretofore paid by buyer hereunder the Buyer shall immediately vacate the Premises, or (ii) bring suit against Buyer for specific performance of is obligations under this Agreement. In addition, Seller shall be entitled to pursue all other remedies available in law or equity for any damages, costs and expenses that Seller may have sustained by reason of Buyer's default.

Exec 000328

(a) Upon Seller's termination of this Agreement pursuant to this Section 2.1, any Prothonotary or attorney of any court of record is hereby irrevocably authorized and empowered to appear for Buyer in any action to confess judgment against Buyer, and may sign for Buyer an agreement, for which this Agreement shall be his sufficient warrant, for entering in any competent court an action or actions in Ejectment, and any suits or in said actions to confess judgment against Buyer as well as all persons claiming by, through or under buyer for the recovery by Seller of possession of the Premises.

(b) In any confession of judgment for Ejectment, Seller shall cause to be filed in such action an affidavit setting forth the facts necessary to authorize the entry of judgment and if a true copy of this Agreement (and of the truth of the copy, such affidavit shall be sufficient proof) be filed in such action, it shall not be necessary to file the original as a warrant of attorney notwithstanding any law, rule of court, custom or practice to the contrary. Buyer releases to Seller, and to any and all attorneys who may appear for Buyer, all procedural errors in any proceedings taken by Seller, whether by virtue of the powers of attorney contained in this Agreement or not, and all liability therefore. Buyer expressly waives the benefits of all laws, now or hereafter in force, exempting any property within the Premises or elsewhere from levy or sale. Buyer further waives the right to any notice to remove as may be specified in the Pennsylvania Landlord Tenant Act of April 6, 1951, as amended or similar or successor provision of law, and agrees that five (5) days notice shall be sufficient in any case where a longer period may be statutorily specified.

2.12    *Sellers Default.* If, on the Closing Date, Seller shall fail to perform its Obligations hereunder in accordance with the term of this Agreement, Seller shall return all deposit monies and reimburse all reasonable expenses to buyer within thirty (30) days.

(a)

## ARTICLE 3: MISCELLANEOUS

3.1    *Notices.* All notices, requests and other communications under this Agreement shall be in writing and shall be sent by registered or certified mail, return receipt requested, postage prepaid, or by receipted hand delivery addressed as follows:

11

If intended for Seller:

C/O Charles Pappas, 1357 Gypsy Hill Road, Gwynedd Valley, PA 19437 with a copy to
A. Victor Meitner, Jr. Esquire, 50 Skippack Pike, Broad Axe, PA 19002

If intended for Buyer:

C/o Sannco Ventures LLC, and/or its Nominee, 80 Second Street Pike, Southampton, PA
18966, with a copy to Gregory Javardian, 44 Second Street Pike, Suite 203,
Southampton, PA 18966,

or to such other address or addresses or party or parties of which Sellers or Buyer shall
have given notice as herein provided. All such notices, request or other communications
shall be deemed to have been sufficiently given for all purposes hereof on the date of the
proper mailing thereof, and my be give on behalf of any party by its respective counsel.

3.2    *Modification.*    This Agreement may be modified only by a written
agreement signed by all parties.

3.3    *Captions.*    The captions and headings in this Agreement are inserted for
convenience of reference only, and in no way define, describe, or limit the
scope or intent of this Agreement or any of the provisions hereof.

3.4    *Time Periods.*    Any time periods provided herein which shall end on a
Saturday, Sunday, or legal holiday, shall extend to 5:00 p.m. of the next
full business day. All times specified in this Agreement shall be deemed
of the essence of this Agreement.

3.5    *Counterparts.*    This Agreement may be executed in any number of
identical counterparts, all of which evidence only one agreement and only
one of which need be produced for any purpose.

3.6    *Whole Agreement.*    All understandings and agreements heretofore had
between the parties hereto, whether oral or written, are merged into this
Agreement which alone fully and completely expresses their agreement.

3.7    *Severability.*    If any provision of this Agreement shall be declared
invalid by judicial determination or by express act of any legislative body
with authority to affect this Agreement, only such provision so declared
invalid shall be thus affected, and all other provisions not inconsistent
therewith or directly dependent thereon shall remain in full force and
effect.

3.8    *Governing Law.*    This Agreement shall be governed by and interpreted
and enforced with the laws of the Commonwealth of Pennsylvania.

Exec 000330

3.9    *Time of the Essence.*    Time is of the essence in regard to the performance of the duties and obligations of the parties to this Agreement.

3.10    *Assignment.*    This Agreement shall be binding upon the respective heirs, executors, administrators, successors and, to the extent assignable, on the assigns of the parties hereto, it being expressly understood, however, that the Buyer shall not transfer or assign this Agreement without first obtaining the written consent of the Seller.

3.11    *Condemnation.*  If at or prior to Closing, all or any portion of the Premises is taken by exercise of eminent domain or condemnation, Seller shall give prompt written notice thereof to Buyer and Buyer shall have the option of either: (I) declaring this Agreement terminated by giving notice to Seller, in which event this Agreement shall be void and neither party hereto shall have any further obligation to the other pursuant to this Agreement; or (ii) accepting the deed and bill of sale to be executed and delivered in accordance with the terms of this Agreement upon payment of the Purchase Price without any abatement by reason of such taking or condemnation provided, however, that Seller shall, at Closing, turn over and deliver to Buyer the net proceeds of any award or other proceeds of such taking which may have been collected by Seller as a result of such taking, or if no award or other proceeds shall have been collected by Seller or Seller's agents, deliver to Buyer an assignment of Seller's right to any such award or other proceeds which may be payable as a result of such taking.

3.12    *Brokers.*  Each of Buyer and Seller represents and warrants to the other that no broker or real estate sales person has shown the Buyer the Property or called the property to Buyer's attention, and each party will indemnify and hold harmless the other against any liability which such other party is legally obligated to discharge to any broker which is imposed on said party wholly or partly because of the other's relations or contact with such broker or its representative or other person, together with all reasonable legal expenses and costs of that party necessitated in connection therewith.

3.13    *Limitation of Seller's Liability.*  As a material inducement to Seller to enter into this Agreement, Buyer acknowledges and agrees that Buyer's recourse to Seller for all claims under this Agreement shall be strictly limited to Seller's interest in the Premises, the Business and the Equipment and that neither Seller, nor any of its principles or shareholders shall have any personal liability to Buyer under this Agreement. Buyer further acknowledges and agrees that the provisions of this section 3.13 shall in no respect alter, waive or diminish the release and indemnity protection accorded to Seller under Section 2.8 of this Agreement.

13

Exec 000331

3.14    *Extension of Lease and Purchase.*  This lease and the right to purchase the Premises may be extended by the Buyer upon written notice to Seller for an additional time of six (6) months from July 31, 2000 or until January 31, 2001, upon the following terms and conditions:

    (a)    That Buyer will pay to Seller the sum of Five Thousand Three Hundred Dollars ($5,300.00) **per month** for each month that the lease purchase agreement is extended; and,

    (b)    If Buyer completes closing before July 31, 2000, Buyer shall receive a credit against the purchase price in the amount of $3,500.00 for each month before April 1, 2000 that closing occurs, but subject to a maximum credit of $17,500.00.

3.15    *No Recording.*  This Agreement may not be recorded.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the parties hereto have executed this Agreement on the day and year first above written.

SELLER:

MAPLE GLEN JIFFY WASH, INC., a/k/a THE EXECUTIVE CAR WASH OF MAPLE GLEN, INC.

BY: _____
    CHARLES PAPPAS, PRESIDENT

_____
CHARLES PAPPAS, INDIVIDUALLY

BUYER:

SANNCO VENTURES, LLC

BY: _____
    MICHAEL SANNUTI, PARTNER

BY: _____
    MICHAEL SANNUTI, INDIVIDUALLY

14

Exec 000332