IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EXECUTIVE CAR WASH OF MAPLE GLEN | : | NO. 02-CV-3747 |
| | : | |
| v. | : | |
| | : | |
| ENVIRONMENTAL INC. | : | |
| | : | |
| and | : | |
| | : | |
| ENVIRONMENTAL HAZARD SERVICES, INC. | : | |
| | : | |
| v. | : | |
| | : | |
| ATLANTIC PETROLEUM TECHNOLOGIES, INC. | : | |

**PLAINTIFF EXECUTIVE CAR WASH OF MAPLE GLEN'S
REPLY TO DEFENDANTS ENVIRONMENTAL, INC. AND ENVIRONMENTAL
HAZARD SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Executive Car Wash of Maple Glen, by and through its undersigned counsel, Kaplin, Stewart, Meloff, Reiter & Stein, P.C., responds to the specific averments of Defendants, Environmental, Inc. (hereinafter "Environmental") and Environmental Hazard Services, Inc.'s (hereinafter "Hazard") Motion for Summary Judgment as follows:

1.    Admitted.

2.    Denied.  This allegation refers to a document, that is, the Complaint, which speaks for itself.

3.    Admitted.

4.    Denied.  This allegation refers to a document which speaks for itself.

5.    Admitted.

6. Admitted in part and denied in part. Hazard is the successor to Environmental (copy of relevant portions of John Carney's deposition [hereinafter "Carney Deposition"] attached as Exhibit "A", see pp. 16-18.)

7. Admitted.

8. Admitted that the search was performed by Fidelity Bank and that Dr. Pappas was provided the results of that search.

9. Admitted that the property was originally purchased for approximately Three Hundred and Fifty Thousand Dollars ($350,000) but that Plaintiff's total cost of the property was approximately Six Hundred and Twenty Five Thousand Dollars ($625,000) (see copy of relevant portions of deposition of Charles Pappas [hereinafter "Pappas Deposition"] attached hereto as Exhibit "B", p. 41).

10. Admitted.

11. Admitted that in 1992 Fidelity Bank asked for a "Phase I Study or an Environmental Study" (Pappas Deposition, p. 31).

12. Admitted that Pappas contacted Hazard to fulfill Fidelity Bank's requirements.

13. Admitted that the language contained in paragraph 13 is contained in Exhibit "C" of Defendants' Motion. Further that Exhibit "C" indicates under Section I:

> "The Phase 1 Assessment relies on the review of available documents, interviews with present and readily available former owners of the property, and a visual inspection of the site. The inspection of the site entails a thorough walkthrough of the site, the accompanying land, all buildings on the site, the existing property lines, and an examination of the properties adjacent to the subject property. Sufficient information must be gathered to document each potential hazard recommendation."

14. It is admitted that Hazard's document (attached as Exhibit "C" to Defendants' Motion) states under Section IV Executive Summary under the heading "Underground Storage

Tanks" that "Environmental Hazard Services, conducted a site survey utilizing a Fero Magnetic Locator to identify buried ferrous metal objects" and that contrary evidence indicates that Defendant Hazard did not perform said fero magnetic site survey, rather Hazard paid Atlantic Petroleum Products Technologies, Inc. (hereinafter "Atlantic Petroleum") to perform such survey. To the extent it is implied, it is denied that said fero magnetic survey constituted a Phase I Examination. Further, Plaintiff was unaware of Atlantic Petroleum's alleged involvement (Pappas Deposition, pp. 112-113).

      15.      Denied. This allegation is based upon a document which speaks for itself. In fact, the document makes no reference whatsoever to the fact that tanks had been removed.

      16.      It is admitted the Hazard's report dated December 10, 1992, attached as Exhibit "C" to Defendants' Motion was issued. It is denied that Hazard relied exclusively upon the report of Atlantic Petroleum in that Hazard relied on reports of the Department of Environmental Resources Bureau of Waste Quality Management for 1400 Dreshertown Road, Dresher, PA, which indicated that the tanks had been removed. Unfortunately, Hazard relied upon reports for an incorrect property because the property in question here was located at Limekiln Pike and Welsh Road, Maple Glen, PA (Carney Deposition pp. 83-84 and Exhibit "9A" attached thereto). Further, Hazard's report was prepared by Jack F. Carney, President, as indicated on the first page of Exhibit "C".

      17.      Denied. This allegation refers to a document, Exhibit "C", which speaks for itself. However, as noted above, said report was prepared by Mr. Carney.

      18.      Denied. This allegation refers to a document, Exhibit "C", which speaks for itself. However, as noted above, said report was prepared by Mr. Carney.

19. It is admitted that Plaintiff obtained financing with Fidelity Bank in 1992. As to whether said financing was obtained "notwithstanding" any failure, Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the averment.

20. Denied. This allegation refers to a document which speaks for itself.

21. It is admitted that Mr. Sannuti sold his option to Mr. Bets who required an additional environmental assessment.

22. It is admitted that Mr. Sannuti contacted Environmental, successor to Hazard, to perform the assessment.

23. It is admitted that Environmental performed the assessment and again failed to locate the underground storage tanks.

24. Denied. It is only admitted that Mr. Carney issued a report which again missed the existence of the underground storage tanks.

25. It is admitted that Mr. Bets required more testing and that the underground storage tanks were located.

26. It is admitted that Mr. Carney wrote Charles Pappas by letter dated October 27, 2000, which speaks for itself.

27. Denied. Mr. Carney, upon examination, initially indicated the fero magnetic locators are only able to detect metal two to three feet below the ground surface but indicated further that he was unaware who told him that (Carney Deposition, p. 95), that there are in fact different types of fero magnetic indicators (Carney Deposition, pp. 95-96) and that some of them could be stronger or weaker than others (Carney Deposition, p. 96). Further, as per Hazard's field notes for this project, Hazard believed that the fero magnetic finder would detect "iron by

4

measuring the thickness of the iron" and "if anything found tone from detector would ring alert" (relevant portions of Hazard field notes attached hereto as Exhibit "C").

28. It is admitted that Charles Pappas received Four Hundred and Eighteen Thousand Dollars ($418,000) instead of the originally contracted amount of Five Hundred and Eighteen Thousand Dollars ($518,000), said loss occasioned by the discovery of the underground storage tanks in late 2000 which the Defendants failed to locate (Pappas Deposition pp. 91-92, 136-141 and Exhibits "2" and "3" to that deposition).

29. Denied. It is admitted that Charles Pappas entered into said document which speaks for itself. However, Charles Pappas was obligated to pay Forty Thousand Dollars ($40,000) of this Ninety Nine Thousand Dollars ($99,000) to Mr. Sannuti (Pappas Deposition pp. 43 and 93) and incurred Nine Thousand Dollars ($9,000) in fees to obtain this amount and thus has not been entirely compensated for his loss (Pappas Deposition, pp. 78-80).

30. It is admitted that Plaintiff has entered into a confidential agreement with Atlantic Richfield, has brought this action and has not been entirely compensated for its loss.

31. Admitted.

32. Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

33. Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

34. Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

35. Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

36. Denied. This allegation refers to legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum.

37. Denied. Plaintiff admits that Defendants did not cause the contamination. Plaintiff denies that he has not been harmed by Defendants' failures to find that contamination in that Defendants actions caused them to ascertain the existence of this contamination at such time as it was contemplating sale of the property causing him to suffer reduction in sale price, loss of rentals, etc.

38. Plaintiff has identified Dr. Manion as an expert who will testify as indicated.

39. Plaintiff has identified Dr. Manion as an expert who will testify as indicated.

40. Denied. Whether the contamination existed before 1992 or after 1992 only concerns the amount of damage suffered by the Plaintiff. Because Defendants were negligent and failed to discover the tanks and contamination in 1992 and because of Plaintiff's unawareness of their existence, Plaintiff was unable to evaluate, perform the corrections in a timely and expedient fashion and thus suffered a loss.

41. Denied. There is no evidence is in the record to substantiate Defendants' position as stated herein.

42. Denied. This allegation contains legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response. In any case, Defendants failure to ascertain existence of the tanks and the contamination caused by the tanks caused said condition to still be present on the property in 2000 when Plaintiff was attempting to sell the property. Because of their existence in 2000, Plaintiff suffered the loss in value of the property, loss of rental, profits, additional interest and cleanup costs. (See Pappas Deposition, Exhibits 2 and 3, pages 79-80, 91-92, 136-140 and 144-145, attached, Exhibit "B"

and Plaintiff's Supplemental Responses to Defendants' Supplemental Interrogatories, attached Exhibit "D".)

      43.    Denied. Defendants' allegation is admittedly an argument and is irrelevant. If Plaintiff ascertained the existence of the tanks and contamination in 1992 it could have dealt with those issues at that time, evaluated them and not been in the position of having to deal with them in 2000 during the impending sale of real estate.

      44.    Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

      45.    Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

      46.    Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

      47.    Denied.

      48.    Denied. Even if this allegation is correct, which it is denied, Plaintiff still had lost its ability to evaluate and perform the necessary steps in 1992, which would have enabled Plaintiff to sell the property in 2000 without the storage tanks and contamination which Defendants negligently failed to locate which caused Plaintiff damages indicated in the year 2000.

      49.    Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

      50.    Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

51. Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

52. Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

53. Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

54. Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

55. Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

56. Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response. In addition, Hazard's own document indicated that <u>Hazard</u> performed the fero magnetic test.

57. Denied. It is admitted that there is evidence that Atlantic Petroleum was hired to perform a fero magnetic test. In addition to Hazard's declaration that it performed the test, it is denied that Defendants relied upon these statements alone in that Defendants have admitted that they reviewed and relied upon documentation for the wrong property in preparing the assessment.

58. It is admitted that evidence indicates that Atlantic Petroleum did not perform the task in question correctly. As to the remainder of this paragraph, this allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

59. Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

60. Denied. This allegation alleges legal conclusions to which no response is required. Plaintiff respectfully refers the Court to the attached Memorandum for response.

**WHEREFORE**, Plaintiff, Executive Car Wash of Maple Glen, respectfully requests this Honorable Court deny Defendants' Motion for Summary Judgment.

        Respectfully submitted,

        **KAPLIN STEWART MELOFF REITER & STEIN PC**


        By: _____
           Steven Kapustin, Esquire
           350 Sentry Parkway, Building 640
           Blue Bell, PA 19422
           (610) 941-2662
           Attorney for Plaintiff

Dated: June 9, 2004