EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

EXECUTIVE CAR WASH OF MAPLE GLEN :
PLAINTIFF :
v. :
ENVIRONMENTAL, INC. : NO. 02-CV-3747
and :
ENVIRONMENTAL HAZARD :
SERVICES, INC. :
DEFENDANTS :

ORIGINAL

- - -

FEBRUARY 4, 2004

- - -

Oral deposition of JOHN CARNEY, taken pursuant to notice, was held at the law office of Kaplin, Stewart, Meloff, Reiter & Stein, P.C., 350 Sentry Parkway, Building 640, Blue Bell, Pennsylvania 19422 commencing at 10:12 a.m. on the above date, before Stanley D. Krevitz, Jr., a court reporter and notary public in the Commonwealth of Pennsylvania.

- - -

ESQUIRE DEPOSITION SERVICES
1880 John F. Kennedy Boulevard
15th Floor
Philadelphia, Pennsylvania 19103
(215) 988-9191

Laboratories, you changed the name to become EHS Environmental; is that correct?

A. Yes.

Q. So they're the same corporate structure, though; is that correct?

A. Yes.

Q. You are the sole shareholder?

A. Yes.

Q. Are there any other officers of EHS Environmental other than yourself?

A. No.

Q. Now, that was true of Environmental Hazard Services, Inc., as well, was it not?

A. Yes.

Q. So EHS Laboratories, which became EHS Environmental, continued to do the same sort of Phase 1 evaluations or Phase 1 work that Environmental Hazard Services, Inc., did, did they not?

A. Yes.



Q. Called on the same customers that they had before?

A. Yes.

Q. Sir, this case began as a Complaint filed in federal court, it's a matter of public record. You've seen a copy of this Complaint; is that correct?

A. Yes.

Q. And an Answer was filed by your former counsel on or about August 2, 2002. Did you see a copy of that before it was filed?

A. I don't believe so.

Q. Did you discuss this Answer with your former counsel before it was filed?

A. Yes, I believe so.

Q. Did you discuss with him the items, without going into as to what you discussed, the items in the Complaint and the fact that an Answer was going to have to be filed?

A. Yes.

Q. And he asked you how to, you

know, answer these allegations and you discussed these allegations with him? Again without going into what was said.

A. Yes.

Q. Now, I notice in response -- could you read paragraph number 4 for the record on the first page?

A. "Upon information and belief Environmental is the successor to Hazard."

Q. And your answer on number 4 reads, for the record, please?

A. "Admitted."

Q. Okay. Is that correct?

A. Yes. It's not accurate, but it's correct.

Q. Why do you say "it's not accurate"?

A. Because in all these Complaints they named the company as "Environmental, Inc.," when it was "EHS Environmental, Inc."

Q. All right. Let's try that again. The current company is not

Q. And anything that was in the file you gave to your attorneys?

A. Yes.

Q. As a matter of practice during that time period, were your employees, such as Mr. Berkes or Aquilino who were performing these walk-through inspections, instructed to prepare field notes and have those field notes in the file?

A. I don't recall.

Q. In the document further it says, under "Walkover Survey," that "The inspection of the subject property was to determine what environmental impactors, if any, exist." The phrase "environmental impactors," are you familiar with that phrase?

A. Yes.

Q. What does it mean?

A. Environmental conditions that would affect the property, renovations or demolitions.

Q. How do renovations or



A. Yes.

Q. And you had done business with them before?

A. I don't know.

Q. First of all, what was Atlantic Petroleum Technologies asked to do?

A. I don't know.

Q. Who asked them to do it?

A. I believe Richard Berkes.

Q. Do you know why they were contracted to do whatever it is that they did?

A. No.

Q. You are aware they are the individuals who performed -- they performed a site survey as well; is that correct?

A. Well, they produced a report and a bill, so I assume they did.

MR. KAPUSTIN: We can mark this as Carney-3, Carney-4 and Carney-5.

- - -



(Carney-3, Carney-4 and Carney-5 were marked for identification.)

- - -

BY MR. KAPUSTIN:

Q. I show you exhibits 3, 4 and 5. Have you seen these exhibits before?

A. Yes.

Q. All right. And your previous testimony was you got a bill and a report from this entity Atlantic Petroleum Technologies. Is that bill and report included in there?

A. Yes.

Q. And, for the record, can you say which document is the bill?

A. Carney-5 is the bill.

Q. All right. And which document is the report?

A. Carney-4.

Q. And Carney-3 is a fax; is that correct?

A. Yes.

Q. All right. And you've seen

that before?

A. Yes.

Q. Had you ever seen that before this litigation? Had you seen this in 1992?

A. I don't recall.

Q. Carney-3, it says it's a fax, but it refers to another document. It says it's a two-page document?

A. Yes, it does.

Q. Do you know what was included with that?



A. No, I do not.

Q. Because that's dated December 4 I believe and the others are later; is that correct?

A. Yes.

Q. The fax, Carney-3, it's to Berkes from John Secker, S-e-c-k-e-r. Did you understand him to be an employee of Atlantic Petroleum Technologies?

A. I'm not sure who he is.

Q. Have you ever met Mr. Secker?



A. Not that I know of.

Q. Do you recall speaking with him on the telephone or doing business with him at any point in time?

A. No.

Q. Since you got this report and paid this bill to Atlantic Petroleum Technologies, did you ever use them again?

A. Not that I'm aware of.

Q. Have you spoken to Mr. Secker recently?

A. No.

Q. Do you know where he can be located?

A. No.

Q. Do you know if your counsel has spoken to Mr. Secker?

A. I'm not sure.

MR. HAMILTON: For the record, Steve, we subpoenaed him to testify on February 19, I think you got a copy of the subpoena.

MR. KAPUSTIN: I understand

marked it as "9A."

BY MR. KAPUSTIN:

Q. So you're saying that it was document 9A. And specifically what language are you relying upon?

A. "I called Bob Bradshaw to inquire of the status of the UST removal date. Both tanks have been removed from the ground and the excavation has been backfilled. No notification was given to the department. Atlantic has history of failure to notify."

Q. Do you recall, looking at the top of that document, this was in your file from the 1992 Phase 1?

A. Yes.

Q. Do you recall any discussion with him, or anything, that the address on there was 1400 Dreshertown Road, which is Limekiln Pike and Dreshertown Road?

A. No.

Q. Are you aware that this is not the address of the property in question?



A. I am now.

Q. Going back to 2000, are you the one who did the site assessment, the visual inspection of the site?

A. Yes.

Q. Other than the report, did you maintain any separate notes of what happened or what you saw at the property?

A. Yes.

Q. And to the best of your knowledge you gave those to counsel?

A. Yes.

Q. Turning to Carney exhibit 8, page 10. Under paragraph 7, "Registered Underground Storage Tanks." Where it says "Updated: July, 1999" are you referring to a specific document?

A. Yes.

Q. And what document is that?

A. The documents found in section 5.

Q. At the top of the page?

A. No, that's section --

Q. Of the attachments, okay.



A. Visual inspection.

Q. Now, is that the top of the tank or the bottom of the tank or somewhere else?

A. The top of the tank.

Q. And you say this "is possibly why the magnetic survey performed for Environmental Hazard Services, Inc., did not find the tanks in 1992." I'm saying you, what do you base that on?

A. I've been told that the magnetic detectors, the metal detectors, depending on what kind of substrate they have to penetrate, are only good down to two or three feet.

Q. And who told you that?

A. I don't recall.

Q. Are there different types of Fero metal detectors? And by that I'm not talking about different brands, but did different types of them have different levels of, for want of a better term, depth perception or depth



reception?

A. I don't know.

Q. Some of them could be stronger than others and have different capabilities than others; is that correct?

A. Yes

Q. When this was going on in 2000, did you have any contact with Mr. Berkes to find out what happened?

A. No.

Q. Would you go back to the first page of that document, please?

MR. HAMILTON: Which one?

MR. KAPUSTIN: The last exhibit, number 10, please.

THE WITNESS: (Witness complies).

BY MR. KAPUSTIN:

Q. In the first page of this document, under the third paragraph it says, "Contaminated soil was evident on top of the tanks, on the sides of the tanks, and below the tanks." Now, these



ATLANTIC PETROLEUM TECHNOLOGIES, INC.
DUTTON MILL INDUSTRIAL PARK
396 TURNER WAY
ASTON, PA 19014

DATE: 12 - 4

HANDLING: ( ) URGENT ( ) ROUTINE

TIME: 3:45

FAX NUMBER: ______

FACSIMILE MESSAGE FORM

Page 1 of 2 pages (including this cover sheet).
If you fail to receive all of the pages or if either machine fails, please call.

Our FACSIMILE number is 215-497-6739
Our TELEPHONE number is 215-497-6729

TO: Richard Berkes.

FROM: John Secker,
ATLANTIC PETROLEUM TECHNOLOGIES, INC.

COMMENTS:

THE SITE APPEARS TO BE CLEAR OF UNDERGROUND STORAGE TANKS, EXCEPT FOR A 500 GALLON FUEL OIL TANK IN THE REAR. THE OIL WATER SEPERATORS COULD BE CAUSE FOR CONCERN.

EXHIBIT
2-4-04
Carney - 3
SK



Atlantic Petroleum Technologies, Inc.

*Corporate Office:*
Dutton Mill Industrial Park
396 Turner Way
Aston, PA 19014
Tel: (215) 497-6729
Fax: (215) 497-6739

*Regional Offices:*
Boca Raton, FL
Hartsville, SC

Letter# APT 92-357

December 7, 1992

Environmental Hazards Services Inc.
2316 Meetinghouse Rd.
Boothwyn, PA 19061

ATTENTION: Richard Berkes

RE: Executive Car Wash
of Maple Glen.

Dear Richard:

Atlantic Petroleum Technologies conducted a site survey at the above referenced site on 12/4/92. The purpose of the survey was to locate any possible underground storage tanks. A Fero magnetic locator was used to identify buried ferrous metal objects.

The storage tanks used for commercial purposed have been removed at some prior date, unestablished at this point.

A 500 to possibly a 1000 gallon heating oil tank exists behind the building and is in use. This tank is currently unregulated.

There are oil-water separators in the rear of the building with oil on the surface of two manholes out of four. This could be cause for concern. They appear to be of concrete construction and are in use.

Thank you for the opportunity to be of service. Please call with any questions you may have.

Sincerely yours,

ATLANTIC PETROLEUM TECHNOLOGIES, INC.

John C. Secker
Operations Manager

JCS/gam

EXHIBIT
2-4-04
Carney-4
SK



Atlantic Petroleum
Technologies, Inc.

*Corporate Office:*
Dutton Mill Industrial Park
396 Turner Way
Aston, PA 19014
Tel: (215) 497-6729
Fax: (215) 497-6739

*Regional Offices:*
Boca Raton, FL
Hartsville, SC

# INVOICE

TO: Environmental Hazards Service
2316 Meetinghouse Rd.
Boothwyn, PA 19061

DATE: December 7, 1992
INV #: 1103
JOB #: P172PA
TERMS: Due Upon Receipt

ATTENTION: Richard Berkes

RE: Site Survey

---

TOTAL AMOUNT DUE THIS INVOICE $295.00

For 12-92-4784

EXHIBIT
2-4-04
Carney-5
SK

DEPARTMENT OF ENVIRONMENTAL RESOURCES
BUREAU OF WATER QUALITY MANAGEMENT

FIELD NARRATIVE FORM

| NAME | DATE | COUNTY | PROGRAM |
|---|---|---|---|
| Atlantic L.U.S.T. | 6/3/88 | Montgomery | IW |

SITE ADDRESS/LOCATION: 1400 Dreshertown Rd (Limekiln Pike + Dreshertown Rds)

MUNICIPALITY (TWP, BORO): Upper Dublin

ACTIVITY: ☐ PLANNING ☐ COMPLAINT ☐ CONSULTATION ☐ INVESTIGATION ☐ PROGRAM EVALUATION ☐ ENFORCEMENT ☐ INSPECTION ☐ OTHER, ______

FOLLOW UP ACTIVITY: ☐ NONE ☐ LETTER ☐ OTHER, ______ ☐ REINSPECTION ☐ RETURN CALL

NARRATIVE: (Include as appropriate: direction to site; indicate all individuals present; list points discussed; describe conditions observed; diagram site; note sampling activities.)

Marcy,

Tony Caraso of Atlantic 339-2603 called to inform us of two tank test failures at the above location. 1 Super Unleaded + 1 Regular Unleaded failed and are being pumped out. Bob Bradshaw of Atlantic 339-2568 will be handling the case and will call prior to tank removal.

Rich B

7/7/88

13:20 I called Bob Bradshaw to inquire of status of the UST removal date. Both tanks have been removed from the ground and the excavation has been backfilled. No notification was given to Dept. Atlantic has history of failure to notify. VL will be sent outlining site ~~require~~ remediation requirements

SIGNATURE OF WQM PERSONNEL

SIGNATURE OF RECIPIENT

EXHIBIT
2-4-04
Carney - 9A
SK