**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EXECUTIVE CAR WASH OF MAPLE GLEN | :    NO. 02-CV-3747 |
| v. | : |
| ENVIRONMENTAL INC. | : |
| and | : |
| ENVIRONMENTAL HAZARD SERVICES, INC. | : |
| v. | : |
| ATLANTIC PETROLEUM TECHNOLOGIES, INC. | : |

**PLAINTIFF EXECUTIVE CAR WASH OF MAPLE GLEN'S
MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS ENVIRONMENTAL, INC. AND ENVIRONMENTAL
HAZARD SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT**

**I.    Facts and Legal Standard**

Plaintiff, Executive Car Wash of Maple Glen (hereinafter "Executive") is the former owner of a property located at 400 Limekiln Pike (also known as 601 Welsh Road), Maple Glen, Montgomery County, Pennsylvania. The property was used as a car wash.

In 1992 Plaintiff sought to refinance the property and the financing entity, Fidelity Bank, required an environmental assessment. Plaintiff contacted Defendant Environmental Hazard Services, Inc. (hereinafter "Hazard"), who performed such assessment (Exhibit "C" to Defendant's Motion for Summary Judgment).

Its report of the Environmental Site Assessment (Exhibit "C" noted above) under the title "Executive Summary", and the subtitle "Underground Storage Tanks" that Defendant opined:

> "The subject property was surveyed to locate any possible underground fuel storage tanks. Prior to 1988, the subject property was a service station owned and operated by ARCO. <u>Environmental Hazards Services, conducted a site survey utilizing a Fero Magnetic Locator to identify buried ferrous metal objects. Based on this survey the storage tanks have been removed. Subsequent informational searches could not establish their removal date.</u> There is no evidence of underground storage tanks, fill caps, vent pipes, concrete pads, or distribution equipment. The subject property is considered acceptable in regards to the underground storage tanks." [emphasis added]

There is contrary evidence that the fero magnetic examination was actually performed by Atlantic Petroleum Technologies, Inc. (hereinafter "Atlantic Petroleum"), with whom Hazard Services contracted to perform that portion of the environmental assessment (Exhibit "D" to Defendant's Motion), a selection of which Plaintiff was unaware (Pappas Deposition, Exhibit "B" to Plaintiff's Response, pp. 112-113).  As noted, Atlantic Petroleum is not identified in the environmental site assessment and, indeed, Hazard affirmatively states, in the above quote that <u>it</u> conducted the site survey utilizing a fero magnetic locator.

When Plaintiff attempted to sell the property in 2000, Hazard's successor, Environmental performed another environmental assessment with the same conclusions.  The ultimate buyer was dissatisfied with the assessment and required further analysis.  It was then discovered that three (3) ten thousand (10,000) gallon underground storage tanks and contamination were present at the property.  Plaintiff's sale was delayed, clean up costs were incurred, the sale price was lowered and Plaintiff suffered months of lost rentals, lost profits and additional interest expense.

As a result of those damages, Plaintiff filed the instant lawsuit.  After months of delay occasioned by Defendants' difficulties with its various insurance carriers discovery was finally concluded and Defendants filed the Motion which is the subject of the Memorandum claiming, <u>inter alia</u>, that Plaintiff has suffered no damage occasioned by Defendants' activities and that

even if it did, Plaintiff's losses were caused by the actions of Defendants' subcontractor, Atlantic Petroleum, for which the Defendants are not responsible.

These positions are factually and legally incorrect, particularly when considered against the stringent standard imposed by Federal Rule of Civil Procedure 56(c) relating to summary judgment. That Rule provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In resolving a motion for summary judgment pursuant to Rule 56, the Court is required to determine whether "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In making that determination, the evidence of the non-moving party is to be believed and the District Court must draw all reasonable inferences in the non-movant's favor. Id. at 255. Once the movant satisfies its initial responsibility to inform the Court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact, the non-moving party may put forth contrary evidence to establish the existence of such an issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Unfortunately for the Defendants, they cannot meet that burden for the purposes of this motion. The following facts and inferences, present in the record, must be accepted as true:

1. The Environmental Site Assessment Report of Hazard (Exhibit "C" to Motion), was prepared by Jack F. Carney (Exhibit "C" to Motion, p. 1). The fero magnetic examination was performed by Hazard itself (Exhibit "C" to Motion, Section IV).

2. To the extent that Atlantic Petroleum was contacted or had any involvement, said contact and/or involvement was done without the involvement or knowledge of the Plaintiff (Pappas Deposition pp. 112-113).

3. Plaintiff's only contact with the Defendants was with its principal, Mr. Carney (Pappas Deposition p. 56). Plaintiff called Hazard to perform the assessment and no one else (Pappas Deposition, p. 52).

4. The Defendants were unaware as to what they precisely asked Atlantic Petroleum to do; they do not know why Atlantic Petroleum was contacted, only that Hazard received a bill and report from Atlantic Petroleum indicating "the site appears to be clear of underground storage tanks" (Carney Deposition, pp. 40, 45-48 and Exhibits 3, 4 and 5, all attached as Exhibit "A" to Plaintiff's Response).

5. Defendants believed that the fero magnetic examination "detects iron by measuring the thickness of the iron" and that "tone from detector would ring alert" (Exhibit "C" attached).

6. In performing this Environmental Site Assessment, Defendants reviewed documentation from the Department of Environmental Resources Bureau of Water Quality Management which indicated that underground storage tanks had been removed. Unfortunately, the documentation reviewed was for the wrong property. Defendants reviewed documentation for a property located at 1400 Dreshertown Road (Limekiln Pike and Dreshertown Road), not 400 Limekiln Pike, Maple Glen, Pennsylvania, which it was supposed to do (Carney Deposition, pp. 83-84 and Exhibit 9A attached).

7. Plaintiffs' total investment in the property was approximately Six Hundred and Twenty Five Thousand Dollars ($625,000) (Pappas deposition, p. 41).

8. When Plaintiff attempted to sell the property in 2000, the ultimate buyer, Mr. Bets, required yet another environmental study (Pappas Deposition pp. 69-70).

9. It was at that point that additional underground storage tanks were discovered (Pappas Deposition p. 71).

10. Because of this discovery, the sale was delayed, Plaintiff was forced to accept One Hundred Thousand Dollars ($100,000) less for the property, incurred clean up expenses for which monies were escrowed at settlement (Eighty Thousand Dollars [$80,000]), lost rental, lost profits and interest in an amount in excess of Sixty Thousand Dollars ($60,000) and incurred further cleanup expenses in excess of Ten Thousand Dollars ($10,000) (Pappas Deposition Exhibit 2 and 3, pp. 79-80, 91-92, 136-140, 144-145, attached, Exhibit "B" and Plaintiff's Supplemental Responses to Defendants' Interrogatories, attached, Exhibit "D").

11. Plaintiff received some Ninety-Nine Thousand Dollars ($99,000) in an agreement which was the subject of a confidentiality clause (Exhibit "J" to Defendant's Motion, ¶ 6), incurred Nine Thousand Dollars ($9,000) in fees to obtain that amount and, by agreement with the assignor of the underlying property, distributed Forty Thousand Dollars ($40,000) of that amount (Pappas Deposition pp. 88-90).

In summary, for the purposes of this motion, we know that Defendants performed the Environmental Site Assessment incorrectly in 1992, that Plaintiff was unaware of their malfeasance until 2000 when it was attempting to sell the property. At that time, Plaintiff was forced to take remedial measures reducing the price of the property, incurred cleanup expenses and suffered lost rentals, profits and additional interest, for which it has not been entirely compensated.

## II. Legal Analysis

### A. Agency

Defendants argue that since Atlantic Petroleum Technologies was not a "servant" of the Defendants, that somehow they are not responsible in tort for its conduct and thus are not responsible to the Plaintiff, citing <u>Juarbe v. City of Philadelphia</u>, 288 Pa. Super. 330, 431 A.2d 1073.  Initially Defendants fail to acknowledge that the precise relationship between the Defendants and Atlantic Petroleum is really unknown and thus a jury question is presented which would preclude summary judgment. See <u>Juarbe</u> at page 1076.  Secondly, Defendants fail to acknowledge that they have alleged that they performed the fero magnetic examination and that they examined the incorrect underlying documents regarding the property in reaching their assessment, which creates additional factual questions as to responsibility which must be examined.  Third, the Court would have to consider both factually and legally whether the duties that the Defendants had assumed could be delegable, *Restatement of Agency*, § 214, or the fact that you can really can never delegate to another your own duty to exercise due care. <u>Bartek v. Grossman</u>, 52 A. 209, 212 (PA 1947), <u>Haffner v. Bergdoll</u>, 164 A. 607, 609 (PA 1933).

Furthermore, the finder of fact would have to determine whether Defendants are secondarily liable or, because of the negligent acts they have admitted they performed (reviewing the wrong documents), whether there is concurrent or joint liability.  See <u>Builders Supply Co. v. McCabe</u>, 77 A.2d 368, 371 (PA 1951).

The Defendants' position is simply unfounded.  If they were correct, any professional, such as a scientist, doctor or lawyer, could isolate themselves from tort liability by subcontracting the work to someone else.  Logically, legally and factually this would be an incorrect conclusion even after a full hearing on trial of the merits, let alone at a summary proceeding.

6

B. **Tort Damages**

Defendants argue that Plaintiff's injuries were not proximately caused by Defendants' activities.

There does not seem to be any question that Defendants committed wrongdoing. The tanks were there to be found; the Defendants negligently reviewed the wrong documentation and negligently performed the site examination.

Because of their failures, Pappas was unaware in 1992 that he had underground storage tanks and contaminated soil. Because of Defendants' negligence in 1992, Pappas was unable to evaluate and clean up the property. Because Defendants wrongfully denied Plaintiff that ability in 1992, Plaintiff was forced to take actions in 2000 during an impending sale, which resulted in additional damage.

Defendants' argument aside, their conduct proximately caused damage. Proximate cause is not the only factor, but is a "substantial factor" in bringing about the specific harm caused. Whether in fact it is a "substantial factor" is ordinarily a question of fact for the jury and thus not subject to summary judgment. See Gutteridge v. A.P. Green Services, Inc., et al., 804 A.2d 643, 655 (Pa. Super. 2002). Further, it should be noted that the "substantial factor" need not be quantified as "considerable or large"; it just has to be recognizable. Commonwealth of Pennsylvania v. United States Mineral Products Company, 809 A.2d 1000, 1011, Cmwlth. Ct. 2002).

This substantial factor will be plain and obvious to a finder of fact. Defendants' negligence in performing professional services prevented the Plaintiff from ascertaining and evaluating the harm suffered in 1992 and prevented the Plaintiff from realizing its sale price in 2000, and caused him the additional damages for cleanup, lost rental, lost profits and added interest which he would not have suffered in 1992 (see e.g. Exhibit "D"). No more is required to

7

show a factual issue. <u>Capital Care Corporation v. Hunt</u>, 2004 WL 497947 (Pa. Super.) March 15, 2004. Also see <u>Amendolia v. Rothman</u>, 2003 WL 23162389 page 6 (E.D. Pa. 2003).

### C. **Contract Damages**

Defendants argue briefly that the Plaintiff is not entitled to contract damages because of its view that contract damages are solely those to "put the non-breaching party in as good a position as the party would have been if the breaching party had fully performed". Defendants fail to deal with the concept of "expectation damages", that is those that are measured by "the losses caused and gains prevented by defendant's breach, to the extent that are in excess of any savings made possible by non-performance." <u>ATACS Corp. v. Transworld Communications, Inc.</u>, 155 F.3d 659, 669 (3rd Cir. 1998).

Because Defendants did not find the storage tanks or the contamination, Plaintiff was forced to incur clean up costs and suffered lost rentals, profits and additional interest and a decrease in sales price of the property in the year 2000. Plaintiff recognizes that the underlying cleanup costs in 1992 may not have been the Defendants' responsibility. In fact, as Defendants have noted, Plaintiff has sought and received compensation for essentially that underlying cleanup. What Plaintiff has not been compensated for are the additional costs and devaluation of this property at the time of sale in 2000, which he would not have suffered if Plaintiff knew in 1992 that the tanks and contamination existed. These are "expectation" damages caused by the Defendants' breach, the amount of which is to be determined by a finder of fact.

### III.  Conclusion

Numerous issues have been presented which preclude summary judgment. As such, Defendants' motion should be denied.

                      Respectfully submitted,

                      **KAPLIN STEWART MELOFF REITER & STEIN PC**

                      By: _____
                          Steven Kapustin, Esquire
                          350 Sentry Parkway, Building 640
                          Blue Bell, PA 19422
                          (610) 941-2662
                          Attorney for Plaintiff

Dated:  June 9, 2004