EXHIBIT "A"

**IN THE UNTIED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

# 744-70849

|  |  |  |
|---|---|---|
| EXECUTIVE CAR WASH OF MAPLE GLEN | : |  |
|  | : |  |
| v. | : |  |
|  | : | **NO. 02-CV-3747** |
| ENVIRONMENTAL, INC. | : |  |
| and | : |  |
| ENVIRONMENTAL HAZARD SERVICES, INC. | : |  |
|  | : |  |

**DEFENDANTS ENVIRONMENTAL, INC. AND ENVIRONMENTAL HAZARD**
**SERVICES, INC.'S REQUESTS FOR PRODUCTION OF DOCUMENTS**
**ADDRESSED TO PLAINTIFF**

## DEFINITIONS

**1.     Document or Documents**:     When used in these Requests, the term "document" or "documents" shall be construed in its broadest sense so as to include recorded information in any form, and shall include without limitation both an original and any non-identical copy, writing, any printed or graphic representation, catalogue, circular, advertisement, brochure, label, manual, report, letter, drawing, sketch, note, and memorandum.  The term "document" shall also include any information stored in, maintained on, or accessible through computers, disk drives, or other electronic storage media, or other information storage retrieval systems, including without limitation program files, data files, and data compilations from which information can be obtained (translated, if necessary, by you, into a reasonably useable form), together with the codes or programming instructions and other materials necessary to understand and to use such systems.

Furthermore, **"document"** or **"documents"** shall also include without limitation any written, typed, printed, recorded or graphic matter, however preserved, produced or reproduced, of any type or description, regardless of origin or location, including without limitation any binder, cover note, certificate, letter, correspondence, record, table, chart, analysis, graph, schedule, report, test, study memorandum, note, list, diary, log, calendar, telex, message (including, but not limited to, interoffice and intra-office communications), questionnaire, bill, purchase order, shipping order, contract, memorandum of contract, agreement, assignment, license, certificate, permit, ledger, ledger entry, book of account, check, order, invoice, receipt, statement, financial data, acknowledgment, computer or data processing card, computer or data processing disk, computer-generated matter, photograph, photographic negative, phonograph recording, transcript or log of any such recording, projection, videotape, film microfiche and all other data compilations from which information can be obtained or translated, reports and/or summaries of investigations, drafts and revisions of drafts of any documents and original preliminary notes or sketches, no matter how produced or maintained, in your actual or constructive possession, custody or control or the existence of which you have knowledge, and whether prepared, published or released by you or by any other person.  If a document has been prepared in several copies or additional copies have been made or copies are not identical or which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical, each non-identical copy as a separate document.

**2.    Identify**:      When used in these Requests, the term "identify" shall mean when used in reference to:

   **a.** a document, to state separately:

   i.    its description (e.g., letter, report, memorandum, etc.),
   ii.    its date,
   iii.    its subject matter,
   iv.    the identity of each author or signer,
   v.    its present location and the identity of its custodian,

**b.** an oral statement, communication, conference or conversation, to state separately:

    i.   its date and the place where it occurred,
    ii.   its substance,
    iii.  the identity of each person participating in the communication or conversation, and
    iv.  the identity of all notes, memoranda or other documents memorializing, referring to or relating to the subject matter of the statement,

**c.** a natural person or persons, to state separately:

    i.   the full name of each such person,
    ii.   his or her present, or last known business address and his or her present or last known residential address, and
    iii.  the employer of the person at the time to which the request is directed and the person's title or position at that time,

**d.** an organization or entity other than a natural person (e.g., a company, corporation, firm, association or partnership), to state separately:
    i.   the full name and type of organization or entity,
    ii.   the date and state of organization or incorporation,
    iii.  the address of each of its principal places of business, and
    iv.  the nature of the business conducted.

**3.**    **Governmental Agency**:    When used in these Requests, the term "governmental agency" shall mean any local, state, or federal agency or organization whatsoever, or anyone acting on their behalf, including without limitation, fire department, police department, fire marshal, Consumer Product Safety Commission, National Highway Traffic Safety Administration, Department of Transportation, or other local, state, or federal agency.

**4.**    **Insured or insureds**:  When used in these Requests, the term "insured" or "insureds" shall mean any insured, as identified by the Plaintiff's insurance policy issued on the subject property. It shall also include all subrogated parties connected with this occurrence in any way.

**5.**    **Governmental Agency:**    When used in these Requests, the term "governmental agency" shall mean any local, state, or federal agency or organization whatsoever, or anyone acting on their behalf, including without limitation, fire department, police department, fire marshal, Consumer Product Safety Commission, National Highway Traffic Safety Administration, Department of Transportation, or other local, state, or federal agency.

**6.**    **Identity and or Identify**:    When used in these Requests, the term "identity" or "identify" when used in connection with a person, shall mean that you provide the full name, business and home address, business and home telephone number, employer, date of birth, and social security number. When used in connection with a document, the term "identity" or "identify" shall mean that you provide either the document itself, or the following:
    a.  Date the document was created and generated,
    b.  identify the document author,
    c.  Document description (e.g., letter, deed, memorandum, etc.),
    d.  identify any indicated recipient of the document,
    e.  identify every person to whom the document has ever been disclosed, and the date(s) and circumstances of each such disclosure, and
    f.  document subject matter.

**7.**    **Communication or Communications**:    When used in these Requests, the term "communications" or "communication" shall mean any transmission of information, the information transmitted, and any process by which information is transmitted, and shall include written communications and oral communications.

**8.**    **Relating to:**   When used in these Requests, the term "relating to" shall mean consisting of, referring to, describing, discussing, constituting, evidencing, containing, reflecting, mentioning, concerning, pertaining to, citing, summarizing, analyzing or bearing any logical or factual connection with the matter discussed.

9.  **Claim or Claims**:    When used in these Requests, the term "claim" or "claims" shall mean a demand or assertion, whether oral or written, formal or informal, by any person or monetary payment, the undertaking of action, or the cessation of action.

10. **Consulted or contracted**:    When used in these Requests, the term "consulted" or "contacted" shall mean any form of communication, e.g., oral statements, telephonic conversations or other mechanical communications or any other type of communication including written letters or documents.

11. **Incident**:    When used in these Requests, the term "incident" shall mean the incident that is referred to in the complaint in this matter which gives rise to Defendant's claims.

12. **Accident**:    When used in these Requests, the term "accident" shall mean the accident that is referred to in the complaint in this matter which gives rise to Plaintiff's claims.

13. **Occurrence**:    When used in these Requests, the term "occurrence" shall mean the occurrence that is referred to in the complaint in this matter which gives rise to Defendant's claims

14. **Statement**:    When used in these Requests, the term "statement" includes statements which have been recorded as well as those which have been reduced to writing, unsigned as well as signed statements, and any draft copies as well as final versions of any statements.

15. **Person**:    When used in these Requests, the term "person" includes any individual, partnership, corporation, or other business or legal entity, unincorporated association, or society, municipal or other corporation, local, state, or federal government, their agencies or political subdivisions, and any court or governmental agency. The singular shall include the plural, and the male shall include the female.

16. **Photograph**:    When used in these Requests, the term "photograph" shall mean any visual photographic or electronic reproduction of any type whatsoever, including without limitation negatives, slides, photographs, motion pictures, films, videotapes, and computer graphics files. **When copies of photographs are provided, you shall produce (at the expense of this defendant) un-retouched (or otherwise modified by electronic or photographic means) full frame 5 inch by 7 inch glossy photographs from original negatives of all frames of all rolls of film, together with a contact sheet showing each such negative. When copies of videotapes are provided, you shall produce (at the expense of this defendant) an un-retouched (or otherwise modified by electronic or photographic means) copy from the original tape recording.**

17. **Property**:    When used in these Requests, the term "property" shall mean the real property at which the alleged loss occurred, including without limitation any buildings or other improvements.

18. **Premises**:    When used in these Requests, the term "premises" shall mean the real property at which the alleged loss occurred, including without limitation any buildings or other improvements.

19. **Personal property**:    When used in these Requests, the term "personal property" shall mean the personal property allegedly damaged and claimed by the insured in connection with the alleged loss.

20. **You, Your, and Yourself**:    When used in these Requests, term "you," "your," or "yourself" shall refer to the party to whom these Requests are directed, and shall include anyone acting on behalf of that party, over whom that party has control, or which is, or may be, subrogated to that party's interests, including without limitation any officer, agent, servant, employee, attorney, insurance company, investigator, independent adjusting company, or other person or entity, including those persons or entities outside the United States

21. **Plaintiff or Plaintiffs**:    When used in these Requests, the term "plaintiff" or "plaintiffs" shall mean the plaintiff or plaintiffs in this suit, their or its insureds, agents, subsidiaries, divisions, parent company and holding company and the directors, officers, employees, agents, representatives and other known to you to have acted on their respective behalf. The singular shall include the plural, and the male shall include the female.

22. **Management or Manage**:    When used in these Requests, the term "Management" or "manage" includes any act of directing, conducting, administering, controlling or handling an identified function or duty.

23. **During the relevant time period**:    When used in these Requests, the phrase "During the relevant time period" shall mean a period of five years before and up to the date of occurrence alleged.

24. **Any and All**:    When used in these Requests, the term "any" shall also mean "all and "all" shall mean "any."

25. **And – or**:    When used in these Requests, the term "and" shall mean "or" and "or" shall mean "and" as necessary to call for the broadest possible answer.

## INSTRUCTIONS

1. Your responses to these requests shall be served within thirty (**30**) days after their service upon you.

2. In the event you object to any request in whole or in part, state in complete detail in your response the nature of your objection, and comply with any part of the request to which you do not object.

3. These requests require you to provide documents and things within your possession, custody, or control, and within the possession, custody, or control of anyone over whom you have control, including without limitation any officer, agent, servant, employee, attorney, insurance company, investigator, or independent adjusting company.

4. You are required, in responding to this request, to obtain and furnish all information available to you and any of your representatives, employees, agents, brokers, servants or attorneys and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, servants or attorneys.

5. Each request which seeks information relating in any way to communications, to, from or within a business and or corporate entity, is hereby designated to demand, and should be construed to include, all communications by and between representatives, employees, agents, brokers and or servants of the business and/ corporate entity.

6. Each request should be responded to separately.  However, a document which is the response to more than one request may, if the relevant portion is marked or indexed, be produced and referred to in a later response.

7. All documents produced shall be segregated and identified by the paragraphs to which they are primarily responsive. Where required by a particular paragraph of this Request, documents produced shall be further segregated and identified as indicated in this paragraph.  For any documents that are stored or maintained in files in the normal course of business, such documents shall be produced in such files, or in such a manner as to preserve and identify the file from which such documents were taken.

8.  If you object to part of any request, please furnish documents responsive to the remainder of the request.

9.  Each request refers to all documents that are either known by the defendant to exist or that can be located or discovered by reasonably diligent efforts of the plaintiff.

10. The documents produced in response to these Requests shall include all attachments and enclosures.

11. The documents requested for production include those in the possession, custody or control of plaintiff, its agents, representatives or attorneys.

12. References to the singular include the plural.

13. The use of any tense of any verb shall be considered also to include within its meaning all other tenses of the verb so used.

14. Please note that the plaintiff is under a continuing duty to seasonably supplement the production with documents obtained subsequent to the preparation and filing of a response to each request.

15. All documents called for by this request or related to this request, for which the plaintiff claims a privilege or statutory authority as a ground for non-production shall be listed chronologically as follows:

(a) the place, date and manner of recording or otherwise preparing the document,

(b) the name and title of the sender,

(c) the identity of each person or persons [other than stenographic or clerical assistants] participating in the preparation of the document,

(d) the identity and title with Plaintiff[s], if any, or the person or persons supplying Plaintiffs' attorneys with the information requested above,

(e) the identify for every person to whom the document has ever been disclosed, and the dates and circumstances of each such disclosure,

(f) the identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication,

(g) type of document,

(h) subject matter [without revealing the relevant information for which privilege or statutory authority is claimed]; and

(i) factual and legal basis for claim, privilege or specific statutory or regulatory authority which provides the claimed ground for non-production.

**16.**   Each request to produce a document or documents shall be deemed to call for the production of the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom this Request is addressed. In addition, each request should be considered as including a request for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other [e.g., by reason of difference in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereof].

**17.**   All documents produced in response to this Request shall be produced *en toto* notwithstanding the fact that portions thereof may contain information not requested.

**18.**   If any documents requested herein have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date and subject matter.

**19.**   Where exact information cannot be furnished, estimated information is to be supplied to the extent possible. Where estimation is used, it should be so indicated, and an explanation should be given as to the basis on which the estimate was made and the reason exact information cannot be furnished.

**20.**   With respect to any document requested which was once in possession, custody or control, but no longer is, please indicate the date the document ceased to be in possession, custody or control, the manner in which it is ceased, and the name and address of its present custodian.

**21.**   Unless otherwise indicated, each request is to be construed as encompassing all documents which pertain to the stated subject matter and to events which transpired between 1990 up to the present.

22.   Production can be accomplished by mailing the documents within the Rule time to: **Michael T. Hamilton, Esquire**, 1880 JFK Boulevard - Suite 1200, Philadelphia, PA 19103.

## PLEASE PRODUCE THE FOLLOWING:

1.   Any and all contracts, reports, receipts, or other documents pertaining to contractors who have conducted repairs, improvements or any other changes to the property at issue from date of purchase of the property to the present;

2.   Any and all contracts, reports, receipts, or other documents pertaining to work performed by surveyors or inspectors upon the property at issue from date of purchase of the property to the present;

3.   Each order, agreement, lease and/or contract which relates to the purchase, sale, and/or lease of the property in question;

4.   Any and all photographs which show, or purport to show, the condition of the property or the underground gasoline storage tanks at issue, from the date of the purchase of the property to the present;

5.   All state, county or city issued documents, titles, or other similar materials issued to the property owner;

6.   Any insurance policy insuring the property including, but not limited to, declarations of insurance page, receipt of premium, policy of insurance, addendums to the policy of insurance, if any, applications for insurance and all correspondence relating to the procurement of insurance for the property;

7.   A certificate of occupancy and related documents concerning the subject property;

8.   All mortgage, lease, or rental documents related to the subject property;

9.   Contract of sale between the current owners of the property in question and the individual and/or entity from which the current owner purchased the property in question;

10.  All documents related to the purchase of the property by the current owner, including but not limited to, inspection reports, closing statements, pre and post closing physical inspection reports, mortgage papers and deed papers;

11.  Any and all documents reflection the plaintiff's ownership of the property at issue;

12.  All receipts, estimates or other documents reflecting the current value of the real property at issue;

13.  All contracts or other documents regarding the construction of the property at issue, including all contracts with developers and contractors;

14.  All ledgers, notes, diaries and/or diagrams maintained by plaintiff which relate to the alleged damages sustained by the plaintiff;

15.  Any and all claim forms submitted by the plaintiff to their insurance carrier that relate to the subject loss;

16. **All reports, notes, photographs, diagrams, repair estimates of all experts retained by the plaintiff;**

17. **All documents reviewed or received by experts who are expected to testify;**

18. **All curricula vitae, resumes or other similar documentation on every expert witness consulted by the plaintiff or plaintiff's counsel.**

19. **Any and all reports, notes and/or documents prepared by any individual or entity that has inspected the property at issue;**

19. **All property damage estimates itemizing losses sustained by the plaintiff, as alleged in plaintiff's complaint;**

20. **Any and all contracts, proposals, bids, and/or estimates received by plaintiff for costs associated with the removal of the gasoline storage tanks in question and subsequent clean up of the real property in question;**

21. **Any and all documents showing payment, including but not limited to, canceled checks, release of liens, in satisfaction of contract paid to any contractor for repairs made to the property;**

22. **All permits, diagrams and photographs depicting any modifications, changes and/or renovations made by plaintiff to the property in question;**

23. **Any and all documents demonstrating the retaining or use of any real estate agent or brokerage firm for the sale or leasing of the property in question;**

24. **All other document supporting plaintiff's claims set forth in the plaintiff's complaint.**



**MARKS, O'NEILL, O'BRIEN
& COURTNEY, P.C.**


BY:_____

     **Michael T. Hamilton, Esquire**
     **Mark A. Schiavo, Esquire**
     1880 JFK Boulevard - Suite 1200
     Philadelphia, PA 19103
     I.D. No.: 64867
     (215) 564-6688

     **Attorney for:** Defendants,
     Environmental, Inc. and Environmental
     Hazard Services, Inc.

EXHIBIT "B"

Westlaw.

164 A. 607
**(Cite as: 309 Pa. 558, 164 A. 607)**

Page 1

▷
Supreme Court of Pennsylvania.

HOFFNER et ux.
v.
BERGDOLL.

Jan. 3, 1933.

Action by Joseph B. Hoffner and wife against Erwin R. Bergdoll. Judgment for plaintiff, and defendant appeals.

Reversed, and judgment entered for defendant.

MAXEY, J., dissenting.

West Headnotes

**Landlord and Tenant** ☞**168(1)**
233k168(1) Most Cited Cases

Employee of fourth floor tenant who, instead of climbing stairs, followed fellow employee into dark passageway, on latter's invitation to take elevator, *held* guilty of contributory negligence as matter of law, precluding recovery against landlord for injuries resulting from falling down shaft. The evidence disclosed that plaintiff and fellow employee, who invited her to ride up on the elevator, entered door of building and groped about in the dark. The fellow employee walked ahead of plaintiff, and then stopped, while plaintiff, who had never before been on the ground floor, walked ahead into the open elevator shaft, believing that elevator was present at the floor level and relying on fellow employee's invitation.
**\*\*607 \*559** Appeal from Court of Common Pleas No. 2, Philadelphia County; E. O. Lewis, Judge.

Argued before FRAZER, C. J., and SIMPSON, SCHAFFER, MAXEY, DREW, and LINN, JJ.

David R. Griffith, Jr., of Philadelphia, for

appellant.

Lewis J. Finestone, of Philadelphia, for appellees.

LINN, Justice.

Plaintiffs, husband and wife, have judgment for personal injury sustained by the wife. The question is whether defendant's motion for judgment notwithstanding the verdict should have been granted. Appellant contends that there is no evidence of negligence, and that plaintiff's contributory negligence is clear. He was sued as owner of premises numbered 116 to 122 North **\*560** Eighth street, Philadelphia, a large four-story building fronting on Eighth street, and bounded on the south by Appletree street, an alley 10 or 12 feet wide. The fourth floor was leased to one Rosengarten, for the manufacture of paper boxes. The second floor was leased to a dress manufacturer. Of the first floor, only a small area fronting on Eighth street was leased to a 'soft-drink concern.' The rest of the building was unoccupied save that, apparently by defendant's leave, Rosengarten used part of the unleased portion of the first floor (in his words) 'to keep card boxes there-- they were pretty unhandy to bring up, and I used to store them there and take them upstairs gradually.'

In the extreme southwestern corner of the building, on the alley front, was a freight elevator, described in the evidence as 'something like 8 or 10 feet,' and operating in a space 'enclosed on four sides.' From the alley, access to the elevator was obtained by a door (described 'as wide as the elevator floor') which was opened by raising it; one stepped directly from the alley to the elevator floor. Defendant's lease to Rosengarten provided: 'The lessee shall be entitled to the use of the freight elevator during working hours as all other tenants of the same building, the lessor shall also see that the tenants shall be provided with the proper amount of heat during necessary time, the lessor shall also see that the tenants shall be provided for with repairs when necessary.' Lerner v. Bergdoll, 285 Pa. 193, 195, 131 A. 670. No operator was furnished for the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

164 A. 607
(Cite as: 309 Pa. 558, 164 A. 607)

Page 2

elevator; it was operated by or on behalf of the tenants themselves. A stairway, entered from Eighth **608 street, at the northeast corner of the building, furnished general access for all purposes to all the floors above the first.

Mrs. Hoffner, who shall be referred to as the injured plaintiff, was employed by Rosengarten on the fourth floor, November 14, 1929, to operate a machine used to make paper boxes. The first time she went to her work she walked up the stairway 'around ten-thirty'; she testified *561 that she found on it some intoxicated men of whom she was afraid, but she walked down the same stairs, without difficulty, at quitting time. On the next morning, on her way to work, she met William Green, also employed by Rosengarten; Green said, 'Come on, I'll take you up on the elevator,' and she accepted his invitation. The door leading from the alley to the elevator was then open, and they stepped on the elevator and went to the fourth floor, Green operating the car. At the end of the day Green brought her down and she left by the alley. On the morning of the 16th she again met Green, who again invited her to go up on the elevator with him. When they reached the elevator door this time, however, it was closed, and Green could not open it. About three feet from the elevator door was a door of ordinary size giving entrance to the first floor of the building. Green opened that door and entered, intending to reach the elevator on the side opposite the alley side, and the injured plaintiff followed him in. After groping about in the dark, they passed through the fire door, apparently separating the elevator from the rest of the first floor, when plaintiff, thinking the elevator was in place, stepped where she thought it might be, and fell down the elevator shaft and was injured. Defendant put in no testimony.

There is evidence to support a finding that defendant landlord was negligent in allowing the elevator to remain out of order in the manner and for the period and with the notice from the city authorities described in the evidence, so that the gate, which normally would have closed the shaft when the car was at another floor, did not close, leaving, on this morning, no barrier to prevent stepping into the shaft. But, as the injured plaintiff was so clearly guilty of contributory negligence as to bar recovery, we shall assume, for present purposes, the landlord's liability to licensees for the negligent condition of the premises without

discussing the basis for it. *562Fordyce v. White Star Bus Lines, 304 Pa. 106, 110, 155 A. 98. In dealing with her conduct, for present purposes, we also assume, without discussion, that in entering the building from the alley, instead of by the regularly provided stairway, she was a licensee (cf. Silver v. Hause, 285 Pa. 166, 171, 131 A. 668) and not a trespasser as appellant contends.

Green and the injured plaintiff furnish the only account of the occurrence. Both agree that, when they entered from the alley, they were in a place so dark that almost nothing could be seen; this condition, with its attendant danger, was obvious to both from the time that the injured plaintiff closed, or almost closed, the door behind her. Before that, she had never been on any part of the first floor. To reach the point where they intended to get on the elevator, it was necessary to walk forward a short distance and then turn to the left--perhaps 15 steps in all. Green walked ahead of her. He said, 'I walked around to what you might call the fire doors in front of the elevator. These doors were open. One door was open against the wall, and the other door was open just enough to start in to the entrance of the elevator shaft. I walked in there. I had to feel with my hand for the door [apparently meaning the elevator gate, which was out of place] and get hold of that back wall to avoid falling down myself. There was nothing there to prevent you from going straight down into the hatchway.' The elevator was at an upper floor. In the darkness, Green seems to have reached into the elevator shaft to grasp the rope controlling the operation of the elevator to bring it down to the first floor. He states that 'it was exceptionally dark in the elevator [shaft] and you couldn't see anybody * * * so I turned around to say something to [her] and not finding her, just at that time I heard a moan from somewhere down in the cellar.' He could not see her then. He said: 'There wasn't any [light] that I know of, no artificial light.' No windows 'threw any light on the first floor.' He had been employed by Rosengarten for about six months before, *563 and used the elevator almost daily. In response to another question, he said: 'No, I wouldn't say that you couldn't see anything, but it was dark.' Asked whether he could see the rope for which he reached, he said: 'No I had to feel around for it that morning.' 'I had, you know, an approximate idea just about where it was.' The learned trial judge asked:

'Q. When this lady walked into this elevator shaft,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

164 A. 607
**(Cite as: 309 Pa. 558, 164 A. 607)**

you were leaning down over the shaft, were you? A. Yes, sir.

'Q. Pulling the rope? A. Pulling the cable down.

'Q. You say the shaft was dark? A. Yes, sir.

'Q. Well, if she had looked, couldn't she have seen that there was no elevator there? A. I couldn't see the elevator myself. I couldn't see the elevator floor there myself.

'Q. You mean you looked down right in front of you? A. No, sir, you couldn't see the elevator.

'Q. What prevented you from falling? A. I held on to the--I had like my fingers behind the doorway so that I wouldn't fall down the shaft. * * *

'Q. Couldn't you see the black space of the pit down below? A. It was too dark. * * *

**609 'Q. But it was so dark you couldn't see? A. Absolutely.

'Q. Couldn't you see whether there was a floor of an elevator or a bottomless pit? A. No, sir, I could not.'

He also testified that he did not warn the injured plaintiff.

She testified that she walked about two feet behind Green.

'Q. Could you see the floor in front of you as you were walking? A. No, sir, it was too dark.

'Q. But could you see Mr. Green? A. I could just about see his form.

'Q. You could just about see his form, and you just followed right behind him? A. Yes.

'Q. How did you walk? A. I walked very slowly, took small steps. * * *

'Q. Now, you say Mr. Green stopped? A. Yes, sir.

'Q. Then why did you continue to walk, Mrs. Hoffner? A. I thought he stopped there to let me pass in there first. I thought I was walking right into the elevator.

'Q. Had you ever been on that first floor of the building before that day? A. I was never on the inside before.'

The learned trial judge asked her:

'Q. *564 Couldn't you see where you were going? A. No, it was too dark, couldn't see a thing.

'Q. Actually too dark to see the floor? A. Yes, sir.'

Asked about lights in the shaft, she said, 'No lights at all.'

'Q. Could you observe Mr. Green's form? A. I could just about see his form.

'Q. What was it that enabled you to see his form, you just said it was dark? A. He had something white on.

'Q. He had on something white? A. I don't know whether it was a shirt or what. No, he had a white sweater on, I believe.

'Q. You think he had on a white sweater? A. Yes.

'Q. You, in matter of faith, presuming that you saw this form like pushing or stepping to the side, then you assumed or presumed to keep on walking, did you not? A. Yes.'

Plaintiffs contend that the injured plaintiff was excused from exercising care by relying on Green; that, though he led her without warning, into a strange place, so dark that she could not see where she was going, her trust in him should be considered the exercise of reasonable care by her for her own safety. For that proposition, they rely on Young v. Philadelphia R. T. Co., 248 Pa. 174, 93 A. 950, 951. It appeared in that case that in driving out of his stable plaintiff was required to cross street railway tracks without opportunity to look for approaching cars after he started driving; he not only looked for them before entering his buggy, but asked a neighbor, standing where he could see, whether any was approaching, before he started to drive, and was told that none was in sight; he then drove out and was struck by a street car before he cleared the track. It was held that contributory negligence was for the jury. But in the course of the opinion it was stated that, on the facts which the jury might find, it

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

164 A. 607
**(Cite as: 309 Pa. 558, 164 A. 607)**

Page 4

could not '* * * be said, as a matter of law, that the plaintiff * * * placed his fate in the hands of Mr. Snyder [the neighbor], depending exclusively no the latter's care. No more can it be said, as a matter of law, that Mr. Snyder was careless in not observing the approaching car and notifying his neighbor **\*565** in time to enable him to avoid the accident. * * *' Obviously, the rule applied in that case does not support plaintiffs' position. If Green had sustained injury by falling down the elevator shaft, his contributory negligence would have barred recovery. Murray v. Earl, 282 Pa. 517, 128 A. 436; Davis v. Edmondson, 261 Pa. 199, 104 A. 582; Fordyce v. White Star Bus Lines, 304 Pa. 106, 155 A. 98; Conboy v. Osage Tribe, 288 Pa. 193, 135 A. 729; Hardie v. Barrett, 257 Pa. 42, 46, 101 A. 75, L. R. A. 1917F, 444; Ballou v. Collamore, 160 Mass. 246, 35 N. E. 463; Bedell v. Berkey, 76 Mich. 435, 43 N. W. 308, 15 Am. St. Rep. 370. If Mrs. Hoffner had made the search for the elevator alone, and had fallen into the well, she could not have recovered, as the brief filed on her behalf seems to concede. The question, then, is, Can she recover because she went in with Green? Is the invitation of Green sufficient to remove the effect of what otherwise would have been her contributory negligence? He was not defendant's servant or authorized on his behalf, or, for that matter, on behalf of their employer, to invite the injured plaintiff to do anything; he had no authority of any kind over her.

Does it appear, then, that she did not conduct herself with reasonable regard for her own safety, failed to exercise ordinary care in the circumstances?

Adapting the language of Young v. Philadelphia R. T. Co., supra, defining what would have been contributory negligence as matter of law, it is clear that she placed her 'fate in the hands of' Green, 'depending exclusively' on him. She delegated performance of a nondelegable duty. She rejected the stairway from Eighth Street and sought her way about, for the first time, in a dark passageway or room; in making that choice, she was bound to assume the risk of her voluntary conduct in such a place if she could not see; the very darkness described in this record was notice of possible danger. If the case be considered as one in which she made Green her agent, or servant, the familiar rule requires **\*\*610** that she suffer the consequences of her servant's negligence. While the **\*566** guest is

not 'ordinarily bound to the same degree of diligence as the driver of the car, * * * he is nevertheless not relieved from the duty to take due precautions for his own protection * * * though he may assume that the driver will perform his duty.' Alperdt v. Paige, 292 Pa. 1, see cases cited page 7, 140 A. 555, 557; Gallup v. Pittsburgh Railways Co., 295 Pa. 203, 206, 145 A. 73; Simrell v. Eschenbach, 303 Pa. 156, 162, 154 A. 369. The guest, knowing that his host is traveling at excessive speed (Wagenbauer v. Schwinn, 285 Pa. 128, 131 A. 699), or on the wrong side of the road (Renner v. Tone, 273 Pa. 10, 116 A. 512), must warn him to comply with the law, and, in default of warning, if injured, will be held to have contributed to his own injury. If he stands on the running board of a moving automobile (Schomaker v. Havey, 291 Pa. 30, 139 A. 495, 61 A. L. R. 1241), or on the platform of an open truck, instead of occupying the vacant seat beside the driver (Zavodnick v. A. Rose & Son, 297 Pa. 86, 91, 146 A. 455), he is guilty of contributory negligence. Other illustrations might be given. Plaintiff could not delegate to Green her duty of exercising due care; there is no dispute of fact.

The judgments are reversed, and judgment is here entered for the defendant.

MAXEY, J., dissented.

164 A. 607, 309 Pa. 558

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

52 A.2d 209                                                                      Page 1
**(Cite as: 356 Pa. 522, 52 A.2d 209)**

▷            Supreme Court of Pennsylvania.

                    BARTEK
                       v.
              GROSSMAN et al.

                April 17, 1947.

Appeal No. 58, March term, 1946, from the Order
and Judgment of the Court of Common Pleas of
Allegheny County at No. 1381, April term, 1944;
John P. Egan, Judge.

Action of trespass by Joseph Bartek against Sadie
L. Grossman and Ida Hoffenberg, who brought in
the United States Realty Company as an additional
defendant for injuries allegedly sustained through
the negligence of the defendants. At the close of
the case the court granted defendants' motion for a
directed verdict and the plaintiff moved for a new
trial. The court en banc refused the motion and
entered judgment for the defendants, and the
plaintiff appeals.

Judgment affirmed.

DREW and STERN, JJ., dissenting.

                West Headnotes

**[1] Negligence** ☞**1289**
272k1289 Most Cited Cases
(Formerly 272k67)

Prospective tenant who fell through open trap door
while being shown the premises should have seen
opening and avoided it if it was visible under
ordinarily careful observation, and should not have
walked into an unfamiliar room and into hidden
danger if the place was so dark that he could not see
the opening, and was contributorily negligent in
either case.

**[2] Negligence** ☞**506(6)**

272k506(6) Most Cited Cases
(Formerly 272k67)

No man of common caution will rely for his safety
upon the watchfulness of others when his own
senses are available to apprise him of likely
imminent danger, and when one can assure his own
safety by the use of his senses he must do so or
abide the consequences of his carelessness.

**[3] Negligence** ☞**1717**
272k1717 Most Cited Cases
(Formerly 272k136(27))

It is not the law of Pennsylvania that when a person
walks into an opening in semi-darkness the case is
always for the jury.

**\*523 \*\*210** Before MAXEY, C.J., and DREW,
LINN, STERN, PATTERSON, STEARNE and
JONES, Jj.

Harry Ravick and Charles G. Notari, both of
Pittsburgh, for appellant.

Joseph R. Doherty and McCloskey, Best & Leslie,
all of Pittsburgh, for Sadie L. Grossman and Ida
Hoffenberg.

S. Stephen Berger, William H. Eckert and Smith,
Buchanan & Ingersoll, all of Pittsburgh, for United
States Realty Corporation.

MAXEY, Chief Justice.

This is an action of trespass to recover damages
for personal injuries incurred by the plaintiff
through the alleged negligence of the defendants.
The original defendants, Sadie L. Grossman and Ida
Hoffenberg, were owners of a vacant store at the
corner of Fifth Avenue and Court Place in the City
of Pittsburgh. They authorized the United States
Realty Company to find a tenant.

**\*524** On or about March 10, 1943, plaintiff, a
prospective tenant, made inquiry at the office of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

52 A.2d 209
(Cite as: 356 Pa. 522, 52 A.2d 209)

United States Realty Company, and this company sent its agent with him to inspect the premises. The plaintiff entered the premises under the agent's guidance and while he followed him from a lighted room into a dark room, he fell into an open trapdoor, sustaining serious injuries to his legs, back, spine and other portions of his body.

Plaintiff brought suit against Sadie L. Grossman and Ida Hoffenberg and they brought upon the record the United States Realty Company as an additional defendant. The case was tried before Judge Egan and a jury. At the close of the case, the court granted defendant's motion for a directed verdict. Plaintiff moved for a new trial. The court en banc refused this motion and entered judgment for the defendants. This appeal followed.

The plaintiff testified that he visited the store with the Realty Company's agent at noon on March 10, 1943, to inspect the premises. He added: 'He took me down to the storeroom and he opened the door and we walked into the store and I measured up the front, and they had another room that was partitioned from the floor to the ceiling. Then when I was finished with the front, their man took me to the other room to measure that room off. He went ahead of me and I followed him and when we were in there, I don't know how many feet, he turned on the right and he said, 'Mr. Bartek, here is the sink.' I made another step and I went right down. I went seven feet down to the cellar, which I later on found out, and they had a trapdoor and it was open. That is all I remember until I got to the storeroom and I was sitting down on a chair in my storeroom and I came to myself.'

As to lighting conditions at that time and place, the following questions were addressed to the plaintiff and he made the answers indicated: 'Why didn't you see this big opening in the floor? A. You couldn't *525 see it.

**211 'Q. It was too dark? A. It is not too dark but when anybody is ahead of you and takes your view away, and who would expect to have any trap door in the cellar that is open? Nobody would expect such a thing * * * If I would see it I would not fall in.'

'Q. Could you have seen that opening in the floor if you had looked at the floor? A. I don't believe I would have been able to see it.

'Q. Why not? Was it too dark? A. No that much dark, but if I had a chance to look around maybe I would see it.

'Q. Nothing stopped you from looking around? A. Certainly. He was ahead of me but as soon as he stopped I made another step and I was down in the cellar * * * When somebody is with you, you don't look down to watch if there is a hole there.'

[1] The court, in its opinion refusing a new trial and ordering judgment for the defendant, correctly said, 'If the opening was visible under ordinarily careful observation, the plaintiff should have seen it and avoided stepping onto it. If the place was so dark that it could not be seen, then plaintiff should not have walked in an unfamiliar room and into a hidden danger. Under every consideration of the case we find contributory negligence on the part of the plaintiff. Cf; Mulford v. Philadelphia R. T. Co., 310 Pa. 521, 165 A. 837; Hellriegel v. Kaufmann & Baer Co., 337 Pa. 149, 9 A.2d 370; Lewis v. Duquesne Inclined Plane Co., 346 Pa. 43, 28 A.2d 925; Walker v. Stern, 132 Pa.Super. 343, 200 A. 897; McVeagh v. Bass, 110 Pa.Super. 379, 168 A. 777, 171 A. 486; Hoffner v. Bergdoll, 309 Pa. 558, 164 A. 607; Bailey v. Alexander Realty Co., 342 Pa. 362, 20 A.2d 754; Jackson v. Grayson, 13 Pa.Dist. 467'.

[2] What this court stated in Bailey v. Alexander Realty Co., 342 Pa. 362, 20 A.2d 754, 756, applies to the instant case: 'No man of common caution will rely for his safety upon the watchfulness of others when his own senses are available to apprise him of likely imminent danger. When an individual can assure his own safety by the use of his senses, he must do so or abide the consequences of his carelessness. * * * The *526 duty of availing oneself of one's senses, for self-protection can seldom be breached with physical impunity and never with legal sanction. * * * The rule that a victim cannot recover damages for injuries sustained by him if he could have avoided the injury by the exercise of ordinary care bars this plaintiff's recovery.' See also Anschel v. Pennsylvania R. Co., 346 Pa. 123, 29 A.2d 694.

McVeagh v. Bass, 110 Pa.Super. 379, 168 A. 777, 171 A. 486, 487, was a case in which a customer (i. e. an invitee, as in the instant case) entered a store which (as she said) 'was so dark that she could not see a thing in the store, not even the floor under her

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

52 A.2d 209
(Cite as: 356 Pa. 522, 52 A.2d 209)

feet.' She was also blind in her right eye. She was accompanied by her daughter. While in the store she walked about three feet to go to the counter, and then fell down an open stairway. The Superior Court in sustaining the action of Judge Horace Stern, then of the Common Pleas Court No. 2 of Philadelphia County, in entering judgment for the defendant non obstante veredicto quoted from Judge Stern's opinion as follows: 'To enter a store where she [plaintiff] had never been before and start to walk forward when it was so dark that she could not see even the floor beneath her feet was an act of contributory negligence.'

[3] We see no logical basis for distinguishing the case just cited and the instant case. It is *not* the law of Pennsylvania that when a person walks into an opening in *semi-darkness* the case is always for the jury. We made that plain in Bailey v. Alexander Realty Co., supra, where we said, 342 Pa. at page 367, 20 A.2d at page 757: 'There is no rule which says that if a man walks into an open elevator shaft in semi-darkness, the question of his negligence must be submitted to the jury. If while in total darkness he walks into an open elevator shaft without first 'feeling his way', he is in law guilty of negligence. If while in semi-darkness he does not use either his sense of sight or his sense of feeling, as a guide, but walks into *527 an opening merely because he assumes that the elevator is at the floor, he is in law guilty of negligence. If in semi-darkness **212 he uses his sense of sight as carefully as he can and reasonably believes he can 'see his way' and *if his sense of sight deceives him*, he may or may not be guilty of negligence and the question will be for the jury. The law does not require a man to possess perfect vision in a setting of complete visibility before proceeding on his course.' (Italics supplied.) In other words, *under all circumstances* a man must use the senses that are available to him. If he uses his sense of sight but because there is enough light to cast shadows which mislead him to his injury the question of his negligence may be for the jury. We so held in Murphy v. Bernheim & Sons, Inc., 327 Pa. 285, 194 A. 194. In the instant case plaintiff made no claim that his senses were deceived by shadows or by anything else. He simply refused to avail himself of his sense of sight and in blind confidence followed the man who was ahead of him. There was no necessity for his doing so. No individual in full possession of his senses is justified in dropping those safe-guards which are instinctive in every

human being and in depending on another for his safety when he is fully able to depend on himself. This court said in Hoffner v. Bergdoll, 309 Pa. 558, 164 A. 607, that the plaintiff could not delegate to another her own duty to exercise due care and that if she did she was guilty of contributory negligence. These cases rule the instant case.

The judgment is affirmed.


DREW and HORACE STERN, JJ., dissent.


DREW, Justice.

I must dissent because I am convinced that the learned court below erred in declaring plaintiff guilty of contributory negligence as a matter of law. It is admitted that the material facts are adequately set forth by the majority opinion, but I must voice my complete disagreement with the legal conclusion reached on the basis of those facts.

*528 'Contributory negligence will be judicially declared only where it is so clear that there is no room for fair and reasonable persons to disagree as to its existence.' Cox v. Scarazzo, 353 Pa. 15, 44 A.2d 294, 295. There plaintiff walked through a swinging door which interfered with his vision, found his path barred by a truck on the sidewalk and stepped into an open delivery well in broad daylight, but his contributory negligence was held to be a jury question. When we apply the legal principles enunciated in that case to the factual situation presented by the record now before us, it leaves no doubt that here plaintiff's negligence cannot be declared as a matter of law.

The case of Dively v. Penn-Pittsburgh Corp., 332 Pa. 65, 2 A.2d 831, while not perfectly analogous, contains many points of similarity with the instant case. There plaintiff, a business invitee, while proceeding to a rest room, entered an alcove in which there were no lighting fixtures and consequently no direct light, but only a subdued light reflected from the adjoining room. Plaintiff fell down a flight of stairs and was injured. A trap door which ordinarily covered the stairs, had been left open at the time of the accident. The following paragraph, 332 Pa. at pages 69, 70, 2 A.2d at page 833 of the court's opinion, by Mr. Justice Horace

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

52 A.2d 209
(Cite as: 356 Pa. 522, 52 A.2d 209)

Page 4

Stern, is particularly pertinent here: 'The question of plaintiff's contributory negligence was undoubtedly for the jury. There is a multitude of cases of this type to be found in the reports, but they necessarily depend largely upon their individual facts. However, analysis would seem to justify their classification into two groups. There are those in which a person wanders around and in a place absolutely dark and where, though not a trespasser, there is no reasonable necessity for his presence. In such cases recovery is denied. Davis v. Edmondson, 261 Pa. 199, 104 A. 582; Hoffner v. Bergdoll, 309 Pa. 558, 164 A. 607; Modony v. Megdal, 318 Pa. 273, 178 A. 395; McVeagh v. Bass, 110 Pa.Super. 379, 168 A. 777, 171 A. 486; Hardman v. Stanley Co. of America, 125 Pa.Super. 41, 189 A. 886. There are other cases *529 where there is some fairly compelling reason for walking in a place which, though dark, is not utterly devoid of light. Under such circumstances, contributory negligence will not be declared as a matter of law. Reid v. Linck, 206 Pa. 109, 55 A. 849; **213 Haugh v. Harris Brothers Amusement Co., 315 Pa. 90, 172 A. 145; Murphy v. Bernheim & Sons, Ltd., 327 Pa. 285, 194 A. 194; Leckstein v. Morris, 80 Pa.Super. 352; Rutherford v. Academy of Music, 87 Pa.Super 355; James v. Smith, 93 Pa.Super. 485; Cathcart v. Sears, Roebuck & Co., 120 Pa.Super. 531, 183 A. 113. It may be stated, therefore, that the controlling factors in determining the question of contributory negligence in accident cases of this nature are the degree of darkness and the justification for the injured person's presence in the place of danger.'

Applying the law as set forth in Dively v. Penn-Pittsburgh Corp., supra, to the facts of the instant case, first we must analyze the evidence to determine the degree of darkness. At the time of the accident there was no artificial light of any kind. The testimony of plaintiff's son who inspected spected the scene of the accident immediately after his father was injured is helpful: 'Q. Could you see anything in that rear room unless you turned on a flashlight? A. You could see part way. The light was shining in. You could see--would give you a faint illumination. You could notice where the white sink stood at. You could see the edge of that.

'Q. All you could see--you could see a little bit of the light from the--A. Where the light shines in the door. All you could see was the sink, and the floor right in front of the door.

'Q. All that you could see then as I understand you of this rear room, or what was in it, without having the flashlight on or some other artificial light turned on, was that portion of the floor immediately inside and directly in line with the opening in the partition and the white sink? A. Yes.

'Q. Is that right? A. That's right.

'Q. Did any of this light that shone in from the front through the door way in the partition, *530 fall upon the trap door? A. No, sir.

'Q. You say that opening was at least six feet long? A. About six feet long.

'Q. And about thirty inches wide? A. About thirty inches wide and about three feet or a little better than that from the partition. That is the distance of it. One edge of it.' The evidence definitely proves that the room was neither pitch dark or in broad daylight. It is clear that some subdued light was reflected from the adjoining room. The actual degree of darkness was a question of fact and therefore only a jury could determine it.

Plaintiff was not exploring an unfamiliar place alone but was being shown the room by an agent with the intention of renting it for business use if satisfactory. Surely plaintiff could place some reliance on his guide and not anticipate a dangerous condition on the premises. The conclusion seems inescapable then that plaintiff has shown complete justification for his presence at the place of danger. Under these facts the question of whether plaintiff exercised reasonable care, could only be determined by a jury. See also Kmiotek v. Anast, 350 Pa. 593, 39 A.2d 923.

The cases relied upon by the majority opinion are not in point and do not control this case. In Bailey v. Alexander Realty Co., 342 Pa. 362, 20 A.2d 754, plaintiff walked to the elevator shaft on the ground floor of a hotel and finding the door partly open and the interior dark, walked through the opening and fell down the shaft. It is obvious that the facts are not even remotely analogous to the instant case. In Hoffner v. Bergdoll, 309 Pa. 558, 164 A. 607, another elevator case, plaintiff tried to excuse her negligence in stepping into an open elevator shaft by saying she relied upon a fellow employee. There was absolutely no reason for her to rely on Green, her fellow employee, because they were both

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

52 A.2d 209
**(Cite as: 356 Pa. 522, 52 A.2d 209)**

Page 5

employed by defendant and were equally familiar with the premises. Likewise, each of the other cases cited in the majority opinion, is completely different from the **\*531** instant case in its factual situation, and therefore, easily distinguishable.

Plaintiff here entered a back room, which was not entirely without light, as a business invitee. He was under the agent's guidance and had not been warned of the dangerous condition. The injury was sustained while he was pursuing a reasonable and proper business purpose and the question of whether he exercised the proper degree of care was for the jury. For these reasons the action of the learned court below **\*\*214** should be reversed and a procedendo awarded.

HORACE STERN, J., concurs in this dissent.

52 A.2d 209, 356 Pa. 522

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works